## HINCHMAN *v.* LINCOLN.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

Argued November 18, 21, 1887. — Decided January 9, 1888.

In general it is for the jury to determine whether, under all the circumstances, the acts which a buyer does or forbears to do amount to a receipt and acceptance within the terms of the statute of frauds.

Where the facts in relation to a contract of sale alleged to be within the statute of frauds are not in dispute, it belongs to the court to determine their legal effect.

A court may withhold from the jury facts relating to a contract of sale alleged to be within the statute of frauds, when they are not such as can in law warrant the finding of an acceptance, and this rule extends to cases where, though there may be a scintilla of evidence tending to show an acceptance, the court would still feel bound to set aside a verdict which finds an acceptance on that evidence.

In order to take an alleged contract of sale out of the operation of the statute of frauds there must be acts of such a character as to place the property unequivocally within the power and under the exclusive dominion of the buyer, as absolute owner, discharged of all lien for the price.

Where, by the terms of the contract, a sale is to be for cash, or any other condition precedent to the buyer's acquiring title in the goods be imposed, or the goods be at the time of the alleged receipt not fitted for delivery according to the contract, or anything remain to be done by the

seller to perfect the delivery, such fact will be generally conclusive that there was no receipt by the buyer.

The receipt and acceptance by the vendee under a verbal agreement, otherwise void by the statute of frauds, may be complete, although the terms of the contract are in dispute.

In this case, on the facts recited in the opinion of the court, the court *held*, (1) that there was sufficient evidence of a verbal agreement between the parties for the sale of the securities at the price named; (2) that the delivery of the property by the plaintiff was not such a delivery of it to the defendant as to amount to a receipt and acceptance of it by him, satisfying the statute of frauds; and (3) that that inchoate and complete delivery was not made perfect by the subsequent acts of the parties.

AT law, in contract, to recover the value of certain securities alleged to have been sold by the plaintiff to the defendant. Judgment for plaintiff. Defendant sued out this writ of error. The case is stated in the opinion of the court.

*Mr. Wayne Mc Veagh* (with whom was *Mr. A. H. Wintersteen* on his brief), for plaintiff in error, cited: Wharton on Agency, § 125, note 6; *People's Bank* v. *Gayley*, 92 Penn. St. 518, 528; *Caulkins* v. *Hellman*, 47 N. Y. 449; *Heermance* v. *Taylor*, 14 Hun, 149; *Gorham* v. *Fisher*, 30 Vt. 428.

*Mr. Theodore F. H. Meyer* filed a brief for plaintiff in error, citing: *Shindler* v. *Houston*, 1 N. Y. (1 Comstock) 261; *S. C.* 49 Am. Dec. 316; *Brand* v. *Focht*, 1 Abb. (N. Y.) App. 185; *Rodgers* v. *Phillips*, 40 N. Y. 519; *Marsh* v. *Rouse*, 44 N. Y. 643; *Baldey* v. *Parker*, 2 B. & C. 37; *S.C.* 3 D. & R. 220; *Bushell* v. *Wheeler*, 15 Q. B. 442; *Cusack* v. *Robinson*, 1 B. & S. 299; *Stone* v. *Browning*, 51 N. Y. 211; *Mechanic's and Trader's Bank* v. *Farmer's and Mechanic's Bank*, 60 N. Y. 40; *Wright* v. *Cabot*, 89 N. Y. 570; *Butler* v. *Evening Mail Association*, 61 N. Y. 634; *Brabin* v. *Hyde*, 32 N. Y. 519; *Wilcox Silver Plate Co.* v. *Green*, 72 N. Y. 17; *Cross* v. *O'Donnell*, 44 N. Y. 661; *Cooke* v. *Millard*, 65 N. Y. 352; *Norman* v. *Phillips*, 14 M. & W. 277; *Morton* v. *Tibbett*, 15 Q. B. 428.

*Mr. Augustus. C. Brown* for defendant in error, cited: Wharton on Agency, § 490; *Pentz* v. *Stanton*, 10 Wend. 271; *S. C.* 25 Am. Dec. 558; *Gregg* v. *Moss*, 14 Wall. 564; *Basset*

v. *United States*, 9 Wall. 38 ; *Zabriskie* v. *Smith*, 13 N. Y. 322 ; *S. C.* 64 Am. Dec. 551 ; *Betz* v. *Conner*, 7 Daly, 550 ; *Walsh* v. *Kelly*, 40 N. Y. 556 ; *Ayrault* v. *Pacific Bank*, 47 N. Y. 570 ; *Schile* v. *Brockhaus*, 80 N. Y. 614 ; *Garfield* v. *Paris*, 96 U. S. 557 ; *Cross* v. *O'Donnell*, 44 N. Y. 661 ; *Jackson* v. *Tupper*, 101 N. Y. 515 ; *Cusack* v. *Robinson*, 1 B. & S. 299 ; *Boutwell* v. *O'Keefe*, 32 Barb. 434 ; *Woodford* v. *Patterson*, 32 Barb. 630 ; *McKnight* v. *Dunlop*, 5 N. Y. (1 Selden) 537 ; *S. C.* 55 Am. Dec. 370 ; *Tompkinson* v. *Straight*, 17 C. B. 697 ; *Wilcox Silver Plate Co.* v. *Green*, 72 N. Y. 17 ; *Pinkham* v. *Mattox*, 53 N. H. 600 ; *Chaplin* v. *Rogers*, 1 East, 192 ; *Parker* v. *Wallis*, 5 El. & Bl. 21 ; *Bushell* v. *Wheeler*, 15 Q. B. 442.

Mr. Justice Matthews delivered the opinion of the court.

This is an action at law brought by Rufus P. Lincoln, a citizen of New York, against Charles S. Hinchman, a citizen of Pennsylvania, to recover $18,000 as the agreed price and value of certain securities, stocks, and bonds alleged to have been sold and delivered by the plaintiff to the defendant. The sale is alleged to have taken place on July 8, 1882. It is set forth in the complaint that the plaintiff acquired title to the securities in question by purchase of one John R. Bothwell, subject to any claim Wells, Fargo & Company had upon the same for advances made by them to or for the account of the said Bothwell; "that thereafter this plaintiff paid to Wells, Fargo & Company the amount of their said advances and took possession of said securities, stocks, and bonds, but stated to the above named defendant that he was willing and would pay over to the Stormont Silver Mining Company, which company was a large creditor of the said Bothwell, and in which company said defendant was very largely interested, any surplus which he derived in any way from said securities, stocks, and bonds, after having reimbursed himself in the sum of about $26,000 and interest for advances theretofore made by him to and for the account of the said Bothwell."

The answer denied the alleged sale and delivery. The action was tried in the Circuit Court of the United States for the Southern District of New York by a jury. There

was a verdict in favor of the plaintiff, on which judgment was rendered, to reverse which this writ of error is prosecuted.

A bill of exceptions sets out all the evidence in the cause, together with the charge of the court, and the exceptions taken to its rulings. At the close of the testimony, defendant's counsel, among other things, requested the court to charge the jury " that there is no evidence in the case of a completed sale of the securities to the defendant, and the plaintiff therefore cannot recover." This request was refused, and an exception taken by the defendant. This raises the general question whether there was sufficient evidence in support of the plaintiff's case to justify the court in submitting it to the jury. The defence rested upon two propositions: 1st, that there was no evidence of any agreement between the parties for a sale and purchase; and 2d, that, if there were, the agreement was not in writing, and there had been no receipt and acceptance of the subject of the sale or any part thereof by the defendant, and that consequently the agreement was within the prohibition of the statute of frauds in New York.

In regard to the first branch of the defence, we think there was sufficient evidence of a verbal agreement between the parties for the sale of the securities at the price named. It appeared in evidence that the plaintiff, having acquired title and possession to the securities previously belonging to Bothwell by paying off the advances due to Wells, Fargo & Company, agreed with the defendant, as representing the Stormont Silver Mining Company, to give to that company and other creditors of Clark and Bothwell the benefit of any surplus there might be after the payment of the amount due to the plaintiff. There is evidence tending to show that thereupon, a suggestion having been made that the defendant should purchase the securities from the plaintiff, it was agreed between them that the plaintiff would sell and the defendant would take them at the price of $18,000, and the next day at three o'clock was appointed as the time for delivery. By way of explanation, and as having a bearing upon other items of evidence in the cause, it is proper to say that the defendant's tes-

timony in denial of the fact of the agreement tends to the point that the proposed purchase by him was not in his individual capacity, but as the representative of the Stormont Silver Mining Company, of which he was one of the trustees, and was made conditional on his procuring the assent thereto of the other trustees. We assume, however, in the further consideration of the case, that the jury were warranted in finding the fact of a verbal agreement of sale as alleged by the plaintiff. The question as thus narrowed is, whether there was sufficient evidence, to submit to the jury, of a receipt and acceptance by the defendant of the securities sold.

It appears that on July 8, 1882, in pursuance of the appointment made the day previously, the plaintiff handed the securities in question, at the office of the Stormont Silver Mining Company in New York, to Schuyler Van Rensselaer, who was the treasurer of that company, and took from him the following receipt:

"OFFICE OF STORMONT SILVER MINING COMPANY,
                No. 2 Nassau, cor. of Wall Street,
"President: William S. Clark.      New York, July 8, 1882.
"Secretary: John R. Bothwell.

"Received of Dr. Rufus P. Lincoln the following certificates of stock on behalf of C. S. Hinchman, and to be delivered to him when he fulfils his contract with Dr. Lincoln to purchase said stocks for $18,000 for
28,400 shares Stormont Silver M'g Co.
24,300  "   San Bruno Copper M'g Co.
   800  "   Eagle Silver M'g Co.
   500  "   Hite Gold Quartz M'g Co.
 1,819  "   Starr Grove Silver M'g Co.
 1,410  "   Menlo Gold Quartz Co., & order on Wells, Fargo
            & Co. for 45,000 shares Quartz Co.
   600  "   Satemo Gold Quartz Co.
   100  "   N. Y. & Sea Beach R. R. Co.
Also $9500 in first mortgage bonds of the Battle Mn. & Lewis R. R. Co.
                          "SCHUYLER VAN RENSSELAER.
"Witness: M. W. TYLER."

The defendant was not present. The receipt, signed by Van Rensselaer, and which he gave to the plaintiff, was witnessed by M. W. Tyler, the plaintiff's attorney, and had been prepared by him. The securities mentioned therein are the same with those described in the complaint. For the purpose of proving the authority of Van Rensselaer to receive and receipt for the securities, some correspondence between the parties was put in evidence by the plaintiff, the material parts of which are as follows:

On July 21, 1882, Tyler, as attorney for the plaintiff, wrote to the defendant as follows:

" I was much disappointed in receiving your letter this afternoon, postponing your appointment with me *in re* Lincoln negotiation. When Dr. Lincoln accepted your offer of $18,000 for his position in reference to the Bothwell securities, he did so unqualifiedly, without even suggesting a modification of your offer, in the hope that in this way he would expedite a conclusion of the matter, and believing that nothing was open except the delivery of the securities, and the receipt of the price. This was on July 7th. On July 8th, learning from Mr. Van Rensselaer that you had left word with him to receive the securities, Dr. L. called on Mr. Van R. and left with him the securities just as he received them. Now, under these circumstances, Dr. L. feels as if there was nothing left to be done except the payment of the money, and that ought not to take very long. Now, I will do anything to accommodate you in this matter in the way of an appointment. If it is inconvenient for you to see me in New York, if you will appoint an early day I will meet you in Philadelphia. If you desire anything in particular should be signed or done by Dr. Lincoln in addition to what he has done already in delivering the securities to Mr. Van R., if you will write me what you request, I will prepare it and take it on with me for delivery to you."

On the same day the plaintiff wrote to the defendant as follows:

" Agreeable to a note from Colonel Tyler, I went down town this P.M., to meet you as per appointment and receive payment

for Stormont and other stocks in accordance with your offer. I was especially disappointed, for I had promised to apply this money this week to cancel that which I borrowed when I took up the stock. I hope nothing will prevent your carrying out our arrangement by Monday or Tuesday at the furthest, and I will esteem it a favor if, on receipt of this, you will telegraph me when I shall receive a check for the amount of the consideration."

In answer to this, the defendant wrote to the plaintiff from Philadelphia, July 22, 1882, as follows:

"Dear Sir — Your favor of the 21st, as well as Mr. Tyler's, duly received. I did not understand that the negotiation between us was finally concluded, but, as I explained to Mr. Tyler, there were some other questions which would have to be settled before I could act in the matter on account of my being a trustee. I told Mr. Van Rensselaer that he could receive the Stormont stock, held by you for joint account of yourself and Stormont, without requiring you to advance any more money, and that I would arrange with you about it; and he, knowing that I was in negotiation with you, took charge of the whole as handed to him by Mr. Tyler, your counsel. There are several questions which come up in regard to it, and I cannot give you any definite reply until I have conferred with counsel and my co-trustees on the subject. My advice to you is to exchange the Stormont stock for receipts, as a majority have already done, on receipt of this; and if you do so and not convenient for you to advance the contribution for additional stock, I will see that it is carried until we have an opportunity to fix up the whole matter."

It is further in evidence, that, a short time after the date of Van Rensselaer's receipt, it was seen by the defendant, but he said or did nothing to repudiate it. Tyler also testifies that on July 20, 1882, he met the defendant, and had this conversation with him:

"I said to Mr. Hinchman that I had been looking for him for several days, and that I supposed he knew we had delivered the securities — the Bothwell securities — to Mr. Van Rensselaer, as he had directed; and he said, 'Yes, that was all right;'

and I said, 'Well, now, when will you be able to close this matter?' . 'Well,' he says, 'I am in a great hurry this morning, but I will come to your office certainly this afternoon or to-morrow afternoon, at three o'clock. You can rely upon my coming and seeing you upon one or the other of those days.'"

. The plaintiff also testified that he had an accidental meeting with the defendant at Long Beach about the 1st of August, 1882. The defendant was in company with his attorney, Mr. Meyer. The interview is stated by the plaintiff as a witness as follows:

"I spoke to him. I do not know that he recognized me, for I was not well acquainted with him before, and he introduced me to Mr. Meyer, and he said, 'This is Dr. Lincoln, from whom I have the Bothwell securities;' and we had some conversation about it, but nothing very definite, although there came up during the conversation a statement that there was some controversy about it. I don't know whether I made the statement, or Mr. Meyer, or Mr. Hinchman. I remarked that there might be some difference — had heard something about some difference — of opinion about it, but that I had none; and I told Mr. Meyer that the idea of turning them over to the Stormont company was an afterthought of Mr. Hinchman; that I conceded nothing of the kind. I never had."

The following letter also is in evidence:

"OFFICE OF STORMONT MINING COMPANY OF UTAH,
No. 2 Nassau, cor. of Wall St.,

"President: Charles S. Hinchman.

"Secretary and Treasurer:
Schuyler Van Rensselaer.    NEW YORK, Aug. 24, 1882.

"SCHUYLER VAN RENSSELAER, Esq.,
Sec'y and Treas. Stormont S. M. Co.,
No. 2 Nassau St., N. Y.

"Dear Sir — Dr. Lincoln, through his attorney, Col. M. W. Tyler, having seen fit to disavow the understanding and agreement by which he obtained 'his position' in carrying the J. R. Bothwell securities in your hands left there by Col. Tyler,

after conference with a majority of our trustees, I am instructed to notify you to retain possession of said securities until a court of competent jurisdiction shall direct you what to do with them, I claiming, as trustee, for the benefit of Stormont treasury, an equitable and *bona fide* interest therein. Please acknowledge safe receipt.

" Yours truly          CHAS. S. HINCHMAN,
" Prest. and Trustee S. S. M. Co."

There was some other correspondence between the parties not material to the present point, but nothing further was done until November 16, 1882, when a written demand was made by the plaintiff upon Van Rensselaer for the return of the securities. This demand was read in evidence on the part of the plaintiff. The following is a copy of it :

" To Schuyler Van Rensselaer :

" As Mr. Charles S. Hinchman refuses to fulfil his contract with Dr. Lincoln to purchase certain securities delivered to you on the 8th day of July, 1882, for Mr. Hinchman, I hereby demand the immediate return of the securities to me, to wit, certificates for

28,400 shares of the Stormont Co.'s stock, or its equivalent.
24,300    "    "    San Bruno Mining Co.'s stock.
   800    "    "    Eagle Silver     "        "
   500    "    "    Hite Gold Quartz "        "
 1,819    "    "    Star Grove Silver "       "
46,410    "    "    Menlo Gold Quartz Co.'s   "
   600    "    "    Satemo       "      "     "
   100    "    "    N. Y. & Sea Beach R. R. Co.'s stock.
$9,500 in First Mortgage bonds of the Battle Mountain & Lewis R. R. Co.

" Dated New York, November 16, 1882.

" Yours, &c.          RUFUS P. LINCOLN,
" By M. W. TYLER, Atty."

The reply to it by Van Rensselaer, as proven, is as follows :

"New York, November 20, 1882.

"Dr. R. P. Lincoln:

"Sir — In answer to the demand made upon me through Mr. M. W. Tyler, I beg to say that I hold the securities mentioned therein on behalf of yourself and Mr. C. S. Hinchman, and I have no interest in or claim upon them personally. I have been notified by Mr. Hinchman not to deliver them to you, and for that reason shall not be able to accede to your demand. Any arrangement agreed to by yourself and Mr. Hinchman shall have my prompt acquiescence.

"I am, &c., &c.,        S. Van Rensselaer,

"per Nash & Kingsford, his Attys."

Nothing further occurred until the bringing of this suit on November 25, 1882.

It is conceded by the counsel for the plaintiff that the delivery of the securities in question by the plaintiff to Van Rensselaer was according to the terms of the receipt taken from him at the time, and of itself was not sufficient evidence of a receipt and acceptance by the defendant to satisfy the statute of frauds. The jury were so instructed by the court. In speaking of it in his charge, the judge said :

"You will recollect that it recites that the property was to be delivered to Mr. Hinchman; I will simply state the language in substance, 'when he had performed his contract with Mr. Lincoln;' in other words, it attached a condition. If you find upon the evidence that that was all there was of this transaction, I think it my duty to say as matter of law, that there was not such delivery as would take the case out of the statute, because, if that were true, if he simply delivered the stock to Mr. Van Rensselaer, to be delivered to Mr. Hinchman, upon the payment of the sum by Mr. Hinchman, it would not be a receipt and acceptance by him, the possession would not be in him, he could exercise no dominion over it until he had performed the act which it was necessary for him to perform in order to obtain the title.

"To put it more plainly, perhaps the plaintiff would have in that event made Mr. Van Rensselaer his agent as well as the agent of the defendant."

· The position of the plaintiff's counsel on this part of the case is stated by him in a printed brief, as follows:

"That receipt was put in evidence not as conclusive of a delivery to Hinchman, but as a fact to be taken into consideration, after the jury had determined the question of defendant's capacity, in connection with his admission that he had given Van Rensselaer some authority in the premises; his admission to Tyler after he saw the receipt that the delivery to Van Rensselaer was 'all right,' his admission at Long Beach that he had the securities, and his direction to Van Rensselaer on August 24th, not to surrender any of the securities. If the jury should find, as it actually did find, that Hinchman was acting in his individual capacity, and that his claim of a representative capacity, first intimated in his letter of July 22d, was an afterthought and false, then the authority given by him to Van Rensselaer was not the limited authority he said it was, and in view of the admission to Tyler that the delivery was 'all right,' the admission at Long Beach of possession, and the subsequent assertion of dominion over the securities, it was a fair inference for the jury that Van Rensselaer's authority was a general one to receive the securities for Hinchman. If the jury should so find, then, under the terms of the receipt, the delivery to Van Rensselaer was a delivery to Hinchman and an acceptance by him sufficient to satisfy the statute, for nothing remained but for him to pay the purchase price."

In dealing with the question arising on this record we keep in view the general rule that it is a question for the jury whether, under all the circumstances, the acts which the buyer does or forbears to do amount to a receipt and acceptance within the terms of the statute of frauds. *Bushell* v. *Wheeler*, 15 Q. B. 442; *Morton* v. *Tibbett*, 15 Q. B. 428; *Borrowscale* v. *Bosworth*, 99 Mass. 378, 381; *Wartman* v. *Breed*, 117 Mass. 18. But where the facts in relation to a contract of sale alleged to be within the statute of frauds are not in dispute, it belongs to the court to determine their legal effect. *Shepherd* v. *Pressey*, 32 N. H. 49, 56. And so it is for the court to withhold the facts from the jury when they are not such as

can in law warrant finding an acceptance, and this includes cases where, though the court might admit that there was a scintilla of evidence tending to show an acceptance, they would still feel bound to set aside a verdict finding an acceptance on that evidence. Browne on the Statute of Frauds, § 321; *Denny* v. *Williams*, 5 Allen, 1, 5; *Howard* v. *Borden*, 13 Allen, 299; *Pinkham* v. *Mattox*, 53 N. H. 600, 604.

In order to take the contract out of the operation of the statute, it was said by the New York Court of Appeals in *Marsh* v. *Rouse*, 44 N. Y. 643, 647, that there must be acts "of such a character as to unequivocally place the property within the power and under the exclusive dominion of the buyer" as absolute owner, discharged of all lien for the price. This is adopted in the text of Benjamin on Sales, § 179, Bennett's 4th Am. ed., as the language of the decisions in America. In *Shindler* v. *Houston*, 1 N. Y. (1 Comstock) 261, (49 Am. Dec. 316,) Gardiner, J., adopts the language of the court in *Phillips* v. *Bristol*, 2 B. & C. 511, "that to satisfy the statute there must be a delivery by the vendor with an intention of vesting the right of possession in the vendee, and there must be an actual acceptance by the latter with the intent of taking possession as owner." And adds: "This, I apprehend, is the correct rule, and it is obvious that it can only be satisfied by something done subsequent to the sale unequivocally indicating the mutual intentions of the parties. Mere words are not sufficient. *Baily* v. *Ogden*, 3 Johns. 421 (3 Am. Dec. 509). . . . In a word, the statute of fraudulent conveyances and contracts pronounced these agreements, when made, void, unless the buyer should 'accept and receive some part of the goods.' The language is unequivocal, and demands the action of both parties, for acceptance implies delivery, and there can be no complete delivery without acceptance." p. 265. In the same case Wright, J., said: "The acts of the parties must be of such a character as to unequivocally place the property within the power and under the exclusive dominion of the buyer. This is the doctrine of those cases that have carried the principle of constructive delivery to the utmost limit. . . . Where the acts of the buyer are equiv-

ocal, and do not lead irresistibly to the conclusion that there has been a transfer and acceptance of the possession, the cases qualify the inferences to be drawn from them, and hold the contract to be within the statute. . . . I think I may affirm with safety that the doctrine is now clearly settled that there must not only be a delivery by the seller, but an ultimate acceptance of the possession of the goods by the buyer, and that this delivery and acceptance can only be evinced by unequivocal acts independent of the proof of the contract."

This case is regarded as a leading authority on the subject in the State of New York, and has been uniformly followed there, and is recognized and supported by the decisions of the highest courts in many other States, as will appear from the note to the case as reported in 49 Am. Dec. 316, where a large number of them are collected. So in *Remick* v. *Sandford*, 120 Mass. 309, 316, it was said by Devens, J., speaking of the distinction between an acceptance which would satisfy the statute and an acceptance which would show that the goods corresponded with the warranty of the contract, that " if the buyer accepts the goods as those which he purchased, he may afterwards reject them if they were not what they were warranted to be, but the statute is satisfied. But while such an acceptance satisfies the statute, in order to have that effect, it must be by some unequivocal act done on the part of the buyer with intent to take possession of the goods as owner. The sale must be perfected, and this is to be shown, not by proof of a change of possession only, but of such change with such intent. When it is thus definitely established that the relation of vendor and vendee exists, written evidence of the contract is dispensed with, although the buyer, when the sale is with warranty, may still retain his right to reject the goods if they do not correspond with the warranty. . . . That there has been an acceptance of this character, or that the buyer has conducted himself in regard to the goods as owner . . . is to be proved by the party setting up the contract."

Mr. Benjamin, in his Treatise on Sales, § 187, says: " It will already have been perceived that in many of the cases the test for determining whether there has been an actual receipt by

the purchaser has been to inquire whether the vendor has lost his lien. Receipt implies delivery, and it is plain that so long as vendor has not delivered there can be no actual receipt by vendee. The subject was placed in a very clear light by Holroyd, J., in the decision in *Baldey* v. *Parker*, 2 B. & C. 37: 'Upon a sale of specific goods for a specific price by parting with the possession, the seller parts with his lien. The statute contemplates such a parting with the possession, and therefore, as long as the seller preserves his control over the goods so as to retain his lien, he prevents the vendee from accepting and receiving them as his own within the meaning of the statute.' No exception is known in the whole series of decisions to the proposition here enounced, and it is safe to assume as a general rule that whenever no fact has been proven showing an abandonment by the vendor of his lien, no actual receipt by the purchaser has taken place. This has been as strongly insisted upon in the latest as in the earliest cases. The principal decisions to this effect are referred to in the note."

In accordance with this, the rule is stated in Browne on the Statute of Frauds, § 317*a*, as follows: "Where, by the terms of the contract, the sale is to be for cash or any other condition precedent to the buyer's acquiring title in the goods be imposed, or the goods be at the time of the alleged receipt not fitted for delivery according to the contract, or anything remain to be done by the seller to perfect the delivery, such fact will be generally conclusive that there was no receipt by the buyer. There must be first a delivery by the seller with intent to give possession of the goods to the buyer."

It is clear, and, as we have seen, is conceded, that the original delivery by the plaintiff to Van Rensselaer of the securities, according to the terms of the receipt taken at the time, was not a delivery to the defendant in the sense of the rule established by the authorities, and that consequently there was not and could not have been at that time a receipt and acceptance of them by the defendant to satisfy the statute of frauds. How far can it be claimed that that inchoate and incomplete delivery was made perfect by any subsequent act or conduct of the parties?

The first circumstance relied on by the plaintiff as material to that point is, that, shortly after the receipt was given, the defendant was informed of it and made no objection to it; but certainly this is insignificant. It added nothing to the transaction stated in the receipt that the defendant assented to it. That assent was simply that the securities had been delivered to Van Rensselaer to be delivered to him when paid for. It did not alter the implied contract between Van Rensselaer and the plaintiff arising upon the terms of the receipt that the subject of the sale should not be delivered to the defendant until he had paid the agreed price.

The next circumstance relied upon is the conversation testified to by Tyler as having taken place on July 20th between him and the defendant. In that conversation Tyler testifies that he said to the defendant " that I supposed he knew we had delivered the securities — the Bothwell securities — to Van Rensselaer as he had directed, and he said, 'Yes, that was all right.'" Here certainly nothing was added to the transaction.

Both these circumstances are also fully met by the well-established rule that mere words are not sufficient to constitute a delivery and acceptance which will take a verbal contract of sale out of the statute of frauds. *Shindler* v. *Houston, ubi supra.*

The next item of evidence in support of the plaintiff's contention is the conversation on August 1, 1882, at Long Beach, between the defendant and the plaintiff, in which the defendant, introducing Meyer to the plaintiff, said: " This is Doctor Lincoln, from whom I have the Bothwell securities." This declaration of the defendant is treated in the argument as an admission by him distinctly of the fact that he had at that time possession of the securities in question, which he could only have by a delivery from Van Rensselaer, either actual or constructive. This construction of the statement, however, in our opinion, is entirely inadmissible. The context plainly shows such not to have been its meaning, for, as appears by the testimony of the plaintiff relating it, the conversation immediately turned to the controversy between the parties as to whether the defendant had been negotiating for the securities in his

individual capacity or as trustee for the Stormont Silver Mining Company. The expression testified to cannot fairly be extended beyond a casual reference to the transaction as it had taken place, and as it then stood upon the terms of the Van Rensselaer receipt. There is nothing whatever in the conversation to justify the inference that there had been a subsequent delivery by Van Rensselaer to the defendant, whereby the possession of the securities had been changed, or whereby the control and dominion over them had been given to the defendant by Van Rensselaer, contrary to the terms of his agreement with the plaintiff as contained in the receipt.

And such was and must have been the understanding of the plaintiff himself, for subsequently, on the 16th of November, he made the written demand upon Van Rensselaer for the immediate return of the securities to him on the ground that up to that time the defendant had refused to fulfil his contract for their purchase. This is certainly an unequivocal act on the part of the plaintiff entirely inconsistent with the assertion that there had been, prior to that time, any delivery by him or by his authority to the defendant of the subject of the alleged sale. Its legal effect goes beyond that; it was a distinct rescission of the contract of sale; it was a notice to Van Rensselaer not to deliver to the defendant thereafter, even if he should offer to complete the contract by payment of the consideration; it put an end, by its own terms, to the relation between the parties of vendor and vendee; it made it unlawful in Van Rensselaer thereafter to deal with the securities, except by a return of them to the plaintiff as their owner. The refusal of Van Rensselaer to comply with the terms of the demand subjected him to an immediate action by the plaintiff for their recovery specifically, if he could reach them by process, or otherwise, for damages for their conversion. This certainly is conclusive of the question of a prior delivery to the defendant, and a receipt and acceptance by him. *Taylor* v. *Wakefield*, 6 El. & Bl. 765; Benjamin on Sales, § 171.

To meet this view, however, the letter of the defendant to Van Rensselaer of August 24th is relied on as evidence of a

receipt and acceptance by the defendant at that time, being, as it is argued, the exercise of control and dominion over the securities by the defendant as owner. That letter, it will be observed, is addressed to Van Rensselaer as secretary and treasurer of the Stormont Silver Mining Company by the defendant, signing himself president and trustee of the same. It declares that the plaintiff had seen fit to disavow the understanding and agreement by which, as claimed by the defendant, he had obtained control of the securities in question which had been left in Van Rensselaer's hands; that after conference with a majority of the trustees of the company he had been instructed to notify Van Rensselaer to retain possession of them until a court of competent jurisdiction should direct him what to do with them, adding, "I claiming, as a trustee, for the benefit of Stormont treasury, an equitable and *bona fide* interest therein." Clearly there is nothing in the sending of this document or in its contents which can have the effect contended for, whether considered alone or in connection with the subsequent refusal of Van Rensselaer to return the securities to the plaintiff in pursuance of his demand. Taken together, they do not constitute either the assertion or exercise of any right in respect to the securities under any contract of sale between the plaintiff and the defendant as individuals.

It is quite true, and the authorities so declare, that the receipt and acceptance by the vendee under a verbal agreement, otherwise void by the statute of frauds, may be complete, although the terms of the contract are in dispute. Receipt and acceptance by some unequivocal act, sufficiently proven to have taken place under some contract of sale, is sufficient to take the case out of the prohibition of the statute, leaving the jury to ascertain and find from the testimony what terms of sale were actually agreed on. *Marsh* v. *Hyde*, 3 Gray, 331; *Townsend* v. *Hargraves*, 118 Mass. 325; Benjamin on Sales, § 170. But, as was said by Williams, J., in *Tomkinson* v. *Staight*, 17 C. B. 697, the acceptance by the defendant must be in the quality of vendee. "The statute does not mean that the thing which is to dispense with the writing is to take the place of all the terms of the contract,

but that the acceptance is to establish the broad fact of the relation of vendor and vendee." The act or acts relied on as constituting a receipt and acceptance, to satisfy the statute, must be such as definitely establish that the relation of vendor and vendee exists. *Remick* v. *Sandford*, 120 Mass. 309.

In the present case the notice of the defendant, as president and trustee of the Stormont company, to Van Rensselaer to retain possession of the securities, and Van Rensselaer's refusal to return the securities to the plaintiff on his demand in consequence thereof, certainly are not facts which tend to establish the existing relation of vendor and vendee between the plaintiff and the defendant. The defendant in his notice makes no claim as such, and certainly no assent on the part of the plaintiff to his exercise of any such dominion is shown. It is clear beyond all controversy, so far as this record shows, that the plaintiff had never consented that Van Rensselaer should deliver the securities to the defendant except upon payment of the price, nor is there a particle of proof that Van Rensselaer has ever done so.

It is further and finally urged, however, by his counsel, that it was competent for the plaintiff to waive the condition of a previous payment of the consideration, and to authorize Van Rensselaer to deliver the securities to the defendant without performance of the contract on the part of the latter, and that the bringing of the present action was such a waiver. If, in point of fact, Van Rensselaer had transferred the manual possession of the securities to the defendant, or if, contrary to the terms of his original receipt, he had agreed with the defendant to hold the securities subject to his order as his agent, free from the conditions of the purchase, and as his absolute property, the plaintiff's assent to this new arrangement might be well implied from his bringing an action against the defendant to recover the consideration. But the premises on which this conclusion rests are not to be found in the present case. There was no transfer of possession from Van Rensselaer to the defendant, nor has there been any change in the relation of Van Rensselaer to his possession of the securities, whereby he has agreed, with the consent of the defendant, to hold them

as agent for the latter as vendee under any contract of sale with the plaintiff.

On the whole, we are well satisfied that there was no evidence of a receipt and acceptance of the securities in question by the defendant to authorize a recovery against him upon the alleged contract of sale. It was error in the Circuit Court to refuse to charge the jury to that effect as requested by the counsel for the defendant. For that error the judgment is

*Reversed, and the cause remanded with directions to grant a new trial.*