KRATZER v. DAY.

(Circuit Court of Appeals, Ninth Circuit. May 10, 1926. Rehearing Denied June 14, 1926.)

No. 4718.

1. Contracts ⊜►113(3)—Alleged contract by director of mining company, whereby, in consideration of sale of stock to him he was to aid another company to gain control of his own company, held unlawful and void.

Alleged contract by director of mining company, whereby, in consideration of sale to him of shares of stock in another company, he agreed to assist such company in gaining control of his own company, *held* unlawful and void as violation of trust by trustee.

2. Frauds, statute of ⊜►90(1)—Alleged contract for purchase of mining stock, to be retained by seller until paid for by application of dividends, held void under statutes either in Idaho, where contract was alleged to have been made, or in Washington, where property was situated (C. S. Idaho, § 7976; Rem. Comp. Stat. Wash. § 5826).

Alleged contract for sale of shares of stock, to be retained by seller as security and delivered when payment was made by application of dividends, *held* void under statutes either of Idaho (C. S. § 7976), where contract was alleged to have been made, or of Washington (Rem. Comp. Stat. § 5826), where property was situated.

**3. Frauds, statute of ⊕121.**

Both the Idaho and Washington statutes of frauds (C. S. Idaho, § 7976, Rem. Comp. Stat. Wash. § 5826) are strictly construed under the decisions of those states.

**4. Frauds, statute of ⊕89(3), 90(2)—Ordinarily acceptance and receipt to satisfy statute must place goods beyond seller's control and within buyer's control.**

Ordinarily acceptance and receipt to satisfy statute must be such transfer of physical possession of property as places goods beyond control of seller and within control of buyer.

**5. Frauds, statute of ⊕129(1)—Alleged contract for sale of corporate stock, whereby director of mining company agreed to assist defendants in securing control of his company and to hold same number of shares of stock in his company as held by defendants in other company until consolidation, held not taken out of statute by proof that, after contract was made, director continued to hold stock in his company.**

Alleged contract by director of mining company, whereby, in consideration of sale to him of shares of stock in another company, he agreed to assist defendants in gaining control of his own company and to hold the same number of shares of capital stock in his company of which he was record owner as held by defendants in other company until consolidation was effected, *held* not taken out of statute by part performance by proof that, after contract was made, director continued to hold his stock in his company.

**6. Frauds, statute of ⊕129(12)—Part performance to withdraw contract from ban of statute must consist of act which performing party would not have done in absence of contract.**

Part performance, to withdraw contract from ban of statute must consist of act which it clearly appears performing party would not have done in absence of contract.

In Error to the District Court of the United States for the Northern Division of the Eastern District of Washington; J. Stanley Webster, Judge.

Action by C. Fred Kratzer against Jerome J. Day. Judgment for defendant, and plaintiff brings error. Affirmed.

The plaintiff in error, as plaintiff in the court below, presented a cause of action arising out of two alleged contracts, the first of which was made in June, 1906, in the state of Washington, whereby, in consideration of the sale to him by the defendant of 40,000 shares of the stock of the Custer Mining Company, the plaintiff agreed to assist the defendant and his two brothers in purchasing the shares of the capital stock and in securing proxies of the voting power of the Tamarack & Chesapeake Mining Company, whose mining property adjoined that of the Custer Mining Company, and in further payment for which

stock the plaintiff was to pay defendant 14 cents per share or $5,600; it being further agreed that the defendant would hold said 40,000 shares as security for said $5,600, and apply thereon the dividends on said shares as they accrued and were collected, and upon the payment of said sum to deliver said 40,000 shares of stock to the plaintiff. The plaintiff alleged performance of said contract on his part and breach thereof by the defendant.

As to the second contract, it was alleged that in June, 1912, in Idaho, the defendant sold to the plaintiff 25,796 shares of the capital stock of the Custer Mining Company on the condition that the plaintiff would assist the defendant and his brothers in the consolidation of said corporation with the Tamarack & Chesapeake Company, and that the plaintiff would hold a like number of the shares of the capital stock of the latter company, of which he was then the record owner, until such consolidation was effected, and that plaintiff would further pay to the defendant, as further consideration for the purchase of said stock in the Custer Mining Company, the sum of 14 cents per share, or $3,611.44, at a time of payment agreed upon, the defendant to hold said 25,796 shares of the Custer Mining Stock as security for said sum, applying the dividends thereon as they accrued and were collected, and on full payment of $3,611.44 to deliver said shares of the Custer Mining Company to the plaintiff. The plaintiff alleged performance of the contract on his part and the receipt by defendant of $3,611.44 in dividends accruing on said stock and the plaintiff's right to the delivery of said stock or its reasonable value, that said consolidation was carried into effect, and a new corporation took over all the mining properties of both said companies. The plaintiff claimed damages in the sum of $927,665.57.

E. R. Lindsey, G. M. Ferris, and C. E. Collier, all of Spokane, Wash., for plaintiff in error.

John P. Gray, of Cœur d'Alene, Idaho, Frank T. Post, of Spokane, Wash., and John H. Wourms, of Wallace, Idaho, for defendant in error.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). The trial court granted a motion for nonsuit and held, as to the Idaho contract, that, to comply with the statute of frauds of both the states of Idaho and Washington, part payment must be coupled

with proof of a definite contract and the payment whether in money or services must be referable solely to the contract, and that under plaintiff's own testimony the contract was void. The Washington contract the court held void as against public policy, ruling that an agreement of a director to use his vote and influence to the disadvantage of his corporation and in the interest of others is immoral and corrupt and will not be enforced.

[1] According to the plaintiff's testimony, he was, at the time when the Washington contract was made, a member of the board of directors of the Tamarack & Chesapeake Mining Company. The defendant and his brothers controlled the adjoining Custer claim. The plaintiff knew that they wished to obtain control of the Tamarack & Chesapeake claim and elect their own board of directors, for the reason that they deemed it uncertain in which claim was the apex of the ore body claimed by both, and that they also wished to obtain control of the books of the Tamarack Company, so that they could the more readily and cheaply buy out stockholders and be in a position to mine the ore, or not, and, by shutting down operations, the more readily force and freeze said stockholders to sell out, and that they had especially in mind the acquisition of the stock of Breen, the largest stockholder. For a consideration personal to himself, the plaintiff promised to use his office and his influence as director to secure for the defendant and his associates the control of the Tamarack & Chesapeake Company. At that time the plaintiff was, as he testified, a member of the committee selected by the stockholders of his company to confer with a committee of the owners of the Custer mine for the purpose of determining whether consolidation should be recommended. He testified: "It was a question in my mind how the Days would handle the Tamarack after Mr. Day and gotten control. If they would get in and shut down the property and freeze Breen to sell or not was in my mind, and if I had this interest they had promised to sell me, 40,000, I was willing to go through the siege with them."

The facts present a case to which the authorities cited by the plaintiff have no application. It may be conceded, as contended by the plaintiff, that a director of a corporation may purchase stock of his company from stockholders with the same freedom as a stranger, that the doctrine that officers and directors are trustees of the stockholder does not extend to their private dealings with stockholders and others, and that in such dealings they may take advantage of knowledge gained through their official position. But those propositions have no bearing upon the agreement between the plaintiff and the defendant in the present case. Here the plaintiff secretly and deliberately entered into a contract by which he agreed to assist in freezing out fellow stockholders and in managing his company's property for the benefit and advantage of third persons. He testified that after Day had fixed it with him he was then willing to undergo the "siege." His testimony presents a clear case of violation of trust by a trustee, and it brings the case within the rule of McMullen v. Hoffman, 174 U. S. 639, 19 S. Ct. 839, 43 L. Ed. 1117; Carlisle v. Smith (D. C.) 234 F. 759; Horbach v. Coyle, 2 F.(2d) 702; Singers-Bigger v. Young, 166 F. 82, 91 C. C. A. 510; Wardell v. Railroad Co., 103 U. S. 651, 26 L. Ed. 509. The contract was forbidden, and was unlawful and void.

[2-4] As to the Idaho contract, we agree with the court below that it is immaterial whether the statute of frauds of Idaho (C. S. § 7976) or that of Washington (Rem. Comp. Stat. § 5826) is applicable. Under either statute the contract pleaded by the plaintiff and testified to by him is void. The Idaho statute makes void an agreement not in writing "unless the buyer accept and receive part of such goods and chattels, * * *, or pay, at the time, some part of the purchase money." The Washington statute provides that under like circumstances the contract shall be void unless the purchaser "shall accept and receive part of the goods so sold, or shall give something in earnest to bind the bargain, or in part payment." Both statutes are, strictly construed. Kerr v. Finch, 25 Idaho, 32, 135 P. 1165; Goodrich v. Rogers, 75 Wash. 212, 134 P. 947.

[5, 6] The contention that there was a sale of the stock at the time of the agreement, and that the defendant thereafter held the same as security, cannot be sustained. It is true that possession of personalty may be transferred, and that there may be an actual receipt of the same by agreement without physical delivery of the property, but here no transfer of possession took place. The defendant continued to hold, as he had held before, certain shares of stock which stood in his name. There was no agreement that he would cease to hold it as owner or assume as to it the character of bailee or agent. There was nothing in the contract to place the shares of stock unequivocally "'within the power and under the exclusive dominion of

the buyer' as absolute owner, discharged of all lien for the price." Hinchman v. Lincoln, 124 U. S. 38, 8 S. Ct. 369, 31 L. Ed. 337.

"Ordinarily the acceptance and receipt must be such a transfer of the physical possession of the property as places the goods beyond the control of the seller and within the control of the buyer. If the property sold is handed to the buyer and immediately handed back to the seller to be held by him until the price is paid, this is not considered a sufficient delivery and acceptance to take the transaction out of the operation of the statute." 23 R. C. L. p. 622.

Nor was there part performance on the part of the plaintiff. The fact that, after making the contract, he continued to hold his 25,796 shares in the Tamarack & Chesapeake Company is no proof of part performance or part payment on his part. It is equally consistent with the assumption that there was no contract of purchase. It is well-settled that the part performance which will withdraw a contract from the ban of the statute must consist of an act which it clearly appears the performing party would not have done in the absence of the contract. Broadway Hospital v. Decker, 47 Wash. 586, 92 P. 445, 14 L. R. A. (N. S.) 213; Horton v. Stegmyer, 175 F. 756, 99 C. C. A. 332, 20 Ann. Cas. 1134.

The judgment is affirmed.