SAMUELS BROTHERS, Appellant, v. BERT FALWELL, Appellee.

No. 41733.

FEBRUARY 7, 1933.

Baron & Bolton, for appellant.

Yeaman & Yeaman, for appellee.

ALBERT, J.—It appears from the record that one James Butler died on the 27th day of February, 1931, and the coroner of Woodbury county called Samuels Brothers, undertaking parlors, to take charge of the body. The plaintiff firm took the body to its undertaking establishment that evening, to wit, February 27th. W. B. Samuels, one of the plaintiffs, testified: That on the 2nd day of March, defendant made arrangements with the witness for a certain casket, steel vault, embalming charge, hearse and grave and cemetery costs, and all matters necessary to be used in connection with the funeral. Defendant asked if the casket and other matters chosen by him could be furnished for $500, and the plaintiff advised that they

would furnish it for that amount. The defendant asked that the body be prepared, put in the casket, and taken down to his home that evening: and when the defendant was asked when he would pay the bill, he replied, "It won't be but a few days, not over a week at the outside. You can get it most any time you come down." The price agreed upon was "the reasonable value for services rendered by us for the various items furnished at defendant's request."

On cross-examination this witness testified that certain other named parties heard the conversation between defendant and the witness: also Mr. Cooley and Mr. Hendrickson heard the agreement. This agreement was made at the Butler home on Monday afternoon following the death on Friday, about four o'clock. When the body was taken, there was no talk about who should or who should not pay the bill. The body was embalmed, and there was no arrangement for the burial of the body until Monday afternoon, when the defendant made the arrangements. The witness knew that the defendant was no relation to the dead man. Defendant told the witness that he had known this dead man for forty years.

A few days after the funeral, the plaintiff wrote the Eagles and asked them if there was any burial benefit provided for the deceased man. He wrote because he heard there was some death benefit, but the plaintiff expected the defendant to pay the bill, and simply wrote the Eagles that they might be able to explain to Mrs. Butler or to the defendant what the status was.

Duckworth, an attorney, was representing the defendant. Plaintiff talked to him once or twice on the street, and finally plaintiff filed a claim against the estate of Butler, deceased, on April 9, 1931. He says he filed this claim because the defendant asked him to do so.

Plaintiff introduced its bookkeeping record, showing the charge of the funeral expenses of James Butler to the defendant. The entry was made on Monday at the time the transaction was made with him (defendant). The only testimony given by the defendant, Bert Falwell, is that he never authorized the plaintiff to file a claim against the estate of James Butler, deceased.

Several letters were introduced in the case which passed between various attorneys, but they have no bearing on the question before us.

At the close of all the testimony, defendant filed a motion for a directed verdict on four grounds:

1. The evidence wholly failed to show any agreement upon the part of the defendant to pay the bill sued upon.

2. The evidence affirmatively shows that the claim sued on was charged to the estate of the deceased, James Butler, and a written claim for that amount was filed with the clerk of Woodbury County and sworn to by the plaintiff on the 9th day of April, 1931.

3. That, if a verdict should be returned for the plaintiff, no legal and binding judgment could be rendered thereon.

. . 4. That, if all of the evidence on the part of the plaintiff were true, it would not sustain a finding in favor of the plaintiff in this cause.

The court ruled on this motion as follows:

"The motion of the defendant will be sustained. In the case of Miller v. Adams, 142 Iowa 515, the Supreme Court approved an instruction containing substantially the following clause: 'If you find that the defendants agreed to pay the plaintiff for such services before they were rendered, and that the plaintiff looked only to and expected pay from defendants only, and did not expect to get her pay from Emma Adams or John Adams, you will find for plaintiff.' In this case the record, as the court views it, is without any evidence showing any consideration, and plaintiff, by its action in filing a claim against the estate of a deceased person and attempting to hold that estate, has shown that this was a collateral agreement, as distinguished from an original agreement. Plaintiff excepts."

.We are not aided in this case by a brief and argument on the part of the defendant. The suit is on an alleged oral agreement in which it is sought to establish a specific oral agreement between the plaintiff and the defendant by which the defendant agreed that although he was in no way related to the deceased he would pay these burial expenses. It appears that Butler died on Friday, and if such an agreement were made as claimed, it was made about four o'coclk on Monday following; and the question is whether or not, under the testimony of the plaintiff's witness Samuels, such an agreement was in fact made.

It appears, so far as we are able to determine from the indefinite record before us, that the real point raised in the case was that the contract was within the statute of frauds. However, no objection was made to any of the testimony on this ground. Holt v. Brown & Co., 63 Iowa 319; Kerr v. Hager, 158 Iowa 69; Clinton S. R. Co. v.

Horras, 176 Iowa 706; Gilman v. McDaniels, 177 Iowa 76. Further than this, the statute of frauds is not involved in a case where no debt existed at the time the agreement was made. Townsend v. White, 102 Iowa 477.

It is quite well settled that, if services are rendered on the strength of the promise of a third party, and no credit is extended to the person to whom the services are rendered, then the promise is original, and not collateral; and where the testimony tends to show that there was credit extended to the deceased, a question for the jury thereby arises. Benbow v. Soothsmith, 76 Iowa 151; Harlan v. Harlan, 102 Iowa 701; Carraher v. Allen, 112 Iowa 168; Marshalltown Stone Co. v. Brick Co., 114 Iowa 574; Pratt v. Fishwild, 121 Iowa 642; Blake v. Robinson, 129 Iowa 196; Miller v. Adams, 142 Iowa 515.

Under the record made in this case, it is fairly deducible from the testimony that the services rendered by the plaintiff were rendered after this conversation between the plaintiff and the defendant on Monday afternoon. At this point, therefore, it is fairly inferable that the plaintiff was looking to the defendant to pay these funeral expenses, and also, that the debt on which the plaintiff sued was not in existence at the time this conversation took place, and it could not be said that defendant was contracting to pay the debt of another. This must follow because the plaintiff insists that he had a specific oral agreement with the defendant to pay these funeral expenses before any such expenses existed. So far, then, the only question before the court at this point is whether or not such oral contract existed as is claimed by the plaintiff.

Evidence was introduced showing that the plaintiff filed a claim for the same in said estate. It is apparently insisted by the defendant, therefore, that this agreement was a collateral and not a direct one. It seems to us that under the record these contentions that what the agreement was between the plaintiff and the defendant (if there was one), and whether or not the agreement was direct or collateral, were jury questions, and the case should have been sent to the jury. —Reversed.

KINDIG, C. J., and EVANS, STEVENS, and DONEGAN, JJ., concur.