**MEDESCO, INC., and Carl R. Faulkner, Plaintiffs,**

v.

**LNS INTERNATIONAL, INC., a California corporation, Soeng Ting, Isei Nagakawa and Liu Kuo–Song, individuals, dba The Soeng Ting Group, Defendants.**

**Civ. No. 90–C–527W.**

United States District Court, D. Utah, C.D.

April 22, 1991.

---

D. David Lambert, Linda Barkley, Provo, Utah, for plaintiffs.

James S. Jardine, Anthony B. Quinn, Salt Lake City, Utah, for defendants.

## MEMORANDUM DECISION AND ORDER

WINDER, District Judge.

This matter is before the court on the motion of defendants Soeng Ting, Isei Nagakawa, Liu Kuo–Song and the Soeng Ting Group (collectively the "individual defendants") for summary judgment on the second claim alleged in the Complaint. A hearing on the motion was held April 19, 1991. Plaintiffs were represented by D. David Lambert and Linda Barkley. Defendants were represented by Anthony B. Quinn. Before the hearing, the court considered carefully the memoranda and other materials submitted by the parties. Since taking the matter under advisement, the court has further considered the law and facts relating to this motion. Now being fully advised, the court renders the following memorandum decision and order.

## BACKGROUND

In July 1989, Medesco, Inc., through its president and chief executive officer, Carl R. Faulkner, entered into a written agreement ("Agreement") with defendant LNS International, Inc. ("LNS"). In essence, the Agreement provided that LNS would purchase 30,000 shares of Medesco's common stock for $150,000 and Medesco would authorize LNS to represent it in the sale of certain latex products in northern California.

Shortly thereafter, the individual defendants, two of whom executed the Agreement on behalf of LNS, approached Faulkner about renegotiating the Agreement and entering into a similar agreement with them individually and acting together as the Soeng Ting Group. Faulkner agreed, and negotiated the terms of a second agreement ("Second Agreement") with defendant Soeng Ting, who was present in Utah at the time. Among the provisions in the Second Agreement (which plaintiffs contend embodies the terms of the oral contract alleged in the second claim of the Complaint) was a promise that Medesco would sell 39,000 shares of its common stock to the Soeng Ting Group in exchange

for $39,000 and a $110,000 working capital loan.

Before leaving Utah, Soeng Ting approved the form of the Second Agreement and represented to Faulkner that he would obtain the signatures of defendants Isei Nagakawa and Liu Kuo–Song on the agreement. As contemplated in both agreements, Faulkner prepared certificates of stock issued in the name of the individual defendants. Faulkner alleges the certificates never were delivered to the defendants because the defendants failed to perform under either agreement.

Shortly after Soeng Ting took the Second Agreement for execution, the Soeng Ting Group, pursuant to the terms of the Second Agreement, sent $7,500 for Medesco's participation in a trade fair in Chicago, Illinois. In reliance on the Second Agreement, Faulkner prepared a display and made other necessary preparations for Medesco's participation in the trade fair. Representatives of both Medesco and the Soeng Ting Group attended the trade fair.

Medesco alleges that its expenses in preparing for and attending the trade fair exceeded the $7,500 that the Soeng Ting Group advanced. In further reliance on the Second Agreement, Medesco alleges it expended substantial time and effort following up on customer contacts made at the trade fair and made promises to prospective customers that it would ship products to them.

The individual defendants subsequently failed to perform further under the terms of the Second Agreement, and refused to execute said agreement. As a result, Medesco alleges it was forced to breach its promises to the prospective customers, and consequently lost customers and sales.

## STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrog-

atories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(c). In applying this standard, the court must construe all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Wright v. Southwestern Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir.1991).

Once the moving party has carried its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Gonzales v. Millers Casualty Ins. Co.*, 923 F.2d 1417, 1419 (10th Cir.1991).[1] The nonmoving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Lujan v. National Wildlife Fed'n*, —— U.S. ——, 110 S.Ct. 3177, 3186, 111 L.Ed.2d 695 (1990) (quoting *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552).

In considering whether there exists a genuine issue of material fact, the court does not weigh the evidence but instead inquires whether a reasonable jury, faced with the evidence presented, could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir.1991).[2] Finally, all material facts asserted by the moving party shall be deemed admitted unless specifi-

---

1. The summary judgment motion may be "opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

2. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

cally controverted by the opposing party. U.S.Ct.D.Utah, Rule 5(e).

## DISCUSSION

The individual defendants contend they are entitled to summary judgment on the second claim of the Complaint, which alleges breach of an oral contract. Because the alleged oral contract involves the sale of securities, defendants contend it is barred by the statute of frauds found at § 70A–8–319 of the Utah Code.[3]

### A. *Whether the Medesco Shares are 'Securities' Under Article 8 of the Utah Uniform Commercial Code*

■ During oral argument, the court expressed its opinion that the Medesco shares that were the subject of the oral contract are, indeed, "securities" within the meaning of Utah Code § 70A–8–319. Under the Utah version of the Uniform Commercial Code, a certificated security is defined as a

share, participation, or other interest in property of or an enterprise of the issuer, or an obligation of the issuer which is:

(i) represented by an instrument issued in bearer or registered form;

(ii) of a type commonly dealt in on securities exchanges or markets, or commonly recognized in any area in which it is issued or dealt in as a medium for investment; and

(iii) either one of a class or series, or by its terms is divisible into a class or series of shares, participations, interests or obligations.

Utah Code Ann. § 70A–8–102(1)(a) (1990). The Utah Supreme Court apparently has not considered the question whether the stock of closely held corporations, such as Medesco, are securities within the meaning of the Utah Uniform Commercial Code—Investment Securities, 70A–8–101, *et seq.* Although plaintiffs question whether the stock of such corporations satisfies the requirement of subsection (ii) of the 70A–8–102(1)(a), the court reaffirms its oral opinion that such securities clearly are *of a type* commonly traded in the securities markets.

This conclusion is supported not only by the plain language of the statute, but by the official comment to that section of the code and ample case law.[4] *See, e.g., Mildfelt v. Lair*, 221 Kan. 557, 561 P.2d 805, 812 (1977); *E.H. Hinds, Inc. v. Coolidge Bank & Trust Co.*, 6 Mass.App. 5, 372 N.E.2d 259, 262 (1978); *Kenney v. Porter*, 604 S.W.2d 297, 302 (Tex.Civ.App.1980); *Wamser v. Bamberger*, 101 Wis.2d 637, 305 N.W.2d 158, 162 (1981). Thus, the oral contract alleged by plaintiffs is barred by the statute of frauds, Utah Code § 70A–8–319, unless some exception to the statute applies.

Because subsections (b)–(d) of § 70A–8–319 are not applicable, plaintiffs rely on the doctrine of promissory estoppel to make the oral contract enforceable against the individual defendants.

**3.** The statute states as follows:

A contract for the sale of securities is not enforceable by way of action or defense unless (a) there is some writing signed by the party against whom enforcement is sought or by his authorized agent or broker sufficient to indicate that a contract has been made for sale of a stated quantity of described securities at a defined or stated price; or (b) delivery of the security has been accepted or payment has been made but the contract is enforceable under this provision only to the extent of such delivery or payment; or (c) within a reasonable time a writing in confirmation of the sale or purchase and sufficient against the sender under Paragraph (a) has been received by the party against whom enforcement is sought and he has failed to send written objection to its contents within ten days after its receipt; or (d) the party against whom enforcement is sought admits in his pleadings, testimony or otherwise in court that a contract was made for sale of a stated quantity of described securities at a defined or stated price. Utah Code Ann. § 70A–8–319 (1990).

**4.** The official comment to section 8–102 of the Uniform Commercial Code states as follows: Interests such as the stock of closely-held corporations, although they are not actually traded upon securities exchanges, are intended to be included within the definitions of both certified and uncertified securities by inclusion of interests "of a type" commonly traded in those markets. Comment to UCC § 8–102.

B. *Availability of the Doctrine of Promissory Estoppel Under Utah Code § 70A-8-319*

The doctrine of promissory estoppel, as set forth in § 90 of the *Restatement (Second) of Contracts,* is part of the common law of Utah. *See Southeastern Equipment Co. v. Mauss,* 696 P.2d 1187, 1188 & n. 1 (Utah 1985) (comparing *Restatement* and *Restatement 2d* articulations of the doctrine and applying latter version).[5] The doctrine is stated as follows:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only be enforcement of the promise. The remedy granted for breach may be limited as justice requires.

Restatement (Second) of Contracts § 90(1) (1981).[6]

The individual defendants argue, however, that promissory estoppel is not available to plaintiffs in this case. The defendants contend that the list of exceptions set forth at § 70A-8-319(b)–(d) is inclusive and, therefore, no judicially created exceptions may be applied to this statute of frauds. This contention runs counter, however, to the express command of another provision of the Utah Uniform Commercial Code, § 70A-1-103, which provides that "[u]nless displaced by the particular provisions of this act, the principles of law and equity, including ... estoppel ... *shall* supplement its provisions."* Utah Code Ann. § 70A-1-103 (1990) (emphasis added).

Although the Utah Supreme Court has not considered the question, other courts, construing these identical provisions of Article 8 of the Uniform Commercial Code, have held that the doctrine of promissory estoppel is available to supplement the statute of frauds governing the sale of securities. *See, e.g., Kiely v. St. Germain,* 670 P.2d 764, 770 (Colo.1983); *Hall v. Horizon House Microwave, Inc.,* 24 Mass.App. 84, 93–94, 506 N.E.2d 178, 184 (1987) (assuming availability of promissory estoppel to supplement statute); *Kenney v. Porter,* 604 S.W.2d 297, 303–305 (Tex.Civ. App.1980) (same).

Because § 70A-8-319 contains no language displacing the doctrine of promissory estoppel, the court concludes the doctrine may be invoked under this section to estop a party from asserting the statute of frauds as a defense. Given that plaintiffs may rely upon promissory estoppel to defeat defendants' statute of frauds defense, the question now becomes whether plaintiffs have alleged facts sufficient to survive summary judgment under this theory.

C. *Application of the Doctrine of Promissory Estoppel to Utah Code § 70A-8-319*

As noted above, the Utah Supreme Court apparently has not considered application of the promissory estoppel doctrine to this particular statute of frauds. However, the

---

**5.** The first *Restatement of Contracts* articulated the doctrine as follows:

> A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only be enforcement of the promise.

Restatement of Contracts § 90 (1932). The principal change in the *Restatement 2d* version of the doctrine is the recognition of the possibility of partial enforcement as reflected in the second sentence of the section. *See* Restatement (Second) of Contracts § 90 reporter's note (1981). Partly because of that change, the requirement that the action or forbearance have a "definite and substantial character" was deleted. *Id.*

**6.** The Utah Supreme Court has applied the doctrine of promissory estoppel in a variety of contexts. *See, e.g., Topik v. Thurber,* 739 P.2d 1101, 1103 (Utah 1987) (attorney promissorily estopped from denying client's assignment of proceeds from personal injury settlement); *Rose v. Allied Development Co.,* 719 P.2d 83, 87 (Utah 1986) (employer not promissorily estopped from terminating at-will employee); *Sugarhouse Finance Co. v. Anderson,* 610 P.2d 1369, 1373 (Utah 1980) (judgment creditor promissorily estopped from denying accord and satisfaction); *Quagliana v. Exquisite Home Builders, Inc.,* 538 P.2d 301, 310 (Utah 1975) (designer promissorily estopped from denying oral promise that prospective home builders would have view).

court has applied an early form of the doctrine to the statute of frauds governing the sale or lease of real property. *See* Utah Code Ann. § 25-5-3 (1989). In a trilogy of cases beginning thirty-eight years ago with *Ravarino v. Price*, 123 Utah 559, 260 P.2d 570 (1953), the Utah Supreme Court discussed what showing was required for a promissory estoppel theory to prevail against the statute of frauds. In each case, the court rejected the promissory estoppel claim. *See Ravarino*, 260 P.2d at 578; *Easton v. Wycoff*, 4 Utah 2d 386, 295 P.2d 332, 335 (1956); *McKinnon v. Corporation of President of Church of Jesus Christ of Latter–Day Saints*, 529 P.2d 434, 437 (Utah 1974).

Citing language from these cases, defendants argue that to overcome the statute of frauds on a promissory estoppel theory, two elements must be present: (1) conduct by the promisor, tantamount to fraud, that clearly indicates an intent not to rely upon the statute of frauds; and (2) substantial reliance by the promisee such that the resulting injury is unjust and unconscionable. Defendants' Reply Memorandum in Support of Summary Judgment at 7–10.

In the court's view, adopting defendant's formulation of the doctrine of promissory estoppel would make the doctrine almost indistinguishable from the tort of fraudulent misrepresentation. *See Sugarhouse Finance Co. v. Anderson*, 610 P.2d 1369, 1373 (Utah 1980) (fraudulent misrepresentation requires a showing of an existing material fact, made knowingly or recklessly for the purpose of inducing reliance thereon upon which plaintiff relies to his detriment). The court does not believe such a cramped view of the promissory estoppel doctrine is justified by either Utah case law or the equitable and policy concerns that underlie the doctrine.

A thorough examination of *Ravarino, Easton* and *McKinnon* reveals fact distinctions from the present case.[7] More importantly, to the extent the language in these cases is relied upon for the modern law of promissory estoppel, such statements are now dated by the Utah Supreme Court's adoption of § 90 of the *Restatement (Second) of Contracts* and the policy of justifiable reliance that underlies this section.[8]

---

7. In *Ravarino v. Price*, 123 Utah 559, 260 P.2d 570 (1953), plaintiff Ravarino purchased a strip of land in reliance on the oral promise of defendant that he would sell Ravarino two tracts of land that adjoined the strip. The court found that Ravarino's purchase of the strip in reliance on defendant's oral promise was not reasonable nor required under the facts. *Ravarino*, 260 P.2d at 576.

In *Easton v. Wycoff*, 4 Utah 2d 386, 295 P.2d 332 (1956), plaintiff, a Colorado gun manufacturer, moved to Utah in reliance on the oral promise of defendant that he would lease plaintiff a building for his gun factory. When plaintiff arrived, he discovered that defendant had no title to the building and was unable to lease the premises. Defendant then negotiated a less favorable lease with the owner of the building. In rejecting plaintiff's promissory estoppel claim, the court found that plaintiff suffered no detrimental reliance other than the "loss of a good bargain." *Easton*, 295 P.2d at 335.

Finally, in *McKinnon v. Corporation of President of Church of Jesus Christ of Latter–Day Saints*, 529 P.2d 434 (Utah 1974), plaintiff alleged existence of an oral contract to convey a right of way over certain federal lands in which defendant had a leasehold interest. The truncated statement of facts in this case make it difficult to draw any meaningful factual analogy to the instant case.

8. In addition, *Ravarino, Easton* and *McKinnon* are of dubious precedential value given the confusion in these cases between the doctrines of equitable estoppel and promissory estoppel. Equitable estoppel requires a misrepresentation as to a *present or past* fact while promissory estoppel requires only reliance on a promise or statement as to a *future* fact. *See Decatur Cooperative Association v. Urban*, 219 Kan. 171, 547 P.2d 323, 329 (1976). At least two commentators have noted the doctrinal confusion created by the Utah Supreme Court's failure to make this distinction in *Ravarino* and *Easton*.

The Utah Supreme Court has particularly confused the two doctrines with its requirement that promissory estoppel can be used to enforce the subsidiary promise only if that promise "constitutes the intended abandonment of an existing right of the promisor." *Easton v. Wycoff*, 4 Utah 2d 386, 295 P.2d 332, 333 (1956); *Ravarino v. Price*, 123 Utah 559, 260 P.2d 570, 575 (1953). This cliche was adopted from an old equitable estoppel case of the United States Supreme Court, *Insurance Co. v. Mowry*, 96 U.S. 544, 547 [24 L.Ed. 674] (1877), and is so devoid of meaning it should never have been expanded to promissory estoppel.

Note, *Promissory Estoppel, Equitable Estoppel and Farmer as Merchant: The 1973 Grain Cases and the UCC Statute of Frauds*, 1977 Utah L.Rev.

926

The doctrinal rationale of promissory estoppel must be reconciled, however, with the public policy promoted by the statute of frauds, specifically, the prevention of fraud through the device of perjury. Just as the statute of frauds should not be used to perpetrate fraud so, too, promissory estoppel should not be allowed to eviscerate the statute of frauds.

■ An attempt to construct an analytical framework to accommodate these competing concerns is found in § 139 of the *Restatement (Second) of Contracts*, entitled "Enforcement by Virtue of Action in Reliance," which states as follows:

(1) A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce the action or forbearance is enforceable notwithstanding the Statute of Frauds if injustice can be avoided only by enforcement of the promise. The remedy for breach is limited as justice requires.

(2) In determining whether injustice can be avoided only by enforcement of the promise, the following circumstances are significant:

(a) the availability and adequacy of other remedies, particularly cancellation and restitution;

(b) the definite and substantial character of the action or forbearance in relation to the remedy sought;

(c) the extent to which the action or forbearance corroborates evidence of the making and terms of the promise, or the making and terms are otherwise established by clear and convincing evidence;

(d) the reasonableness of the action or forbearance;

(e) the extent to which the action or forbearance was foreseeable by the promisor.

Restatement (Second) of Contracts § 139 (1981).

The *Restatement* approach allows a court to balance the policies furthered by the doctrine of promissory estoppel and the particular statute of frauds in light of the particular facts of each case. The Colorado Supreme Court adopted the *Restatement* approach in *Kiely v. St. Germain*, 670 P.2d 764 (Colo.1983), a case that likewise considered the statute of frauds governing the sale of securities. *See also Nicol v. Nelson*, 776 P.2d 1144, 1147 (Colo. App.1989) (applying *Restatement 2d* § 139(1) to statute of frauds governing real property). The *Restatement* approach provides a sound and sensible analytical framework in which to apply the doctrine of promissory estoppel to Utah Code § 70A–8–319. The court believes this approach is consistent with both the policy behind the statute of frauds governing the sale and purchase of securities and the modern doctrine of promissory estoppel as articulated by the Utah Supreme Court.

■ Applying the *Restatement (Second) of Contracts* § 139 test to the factual allegations of the instant case, the court believes plaintiffs have sufficiently established the elements of promissory estoppel so as to estop the individual defendants from raising the statute of frauds as a defense.

According to the affidavit of Carl R. Faulkner, which is undisputed on this record, defendant Soeng Ting negotiated and approved the Second Agreement and repeatedly promised Faulkner that he would obtain the signatures of defendants Isei Nagakawa and Liu Kuo–Song of the document. Affidavit of Carl R. Faulkner ("Faulkner Aff.") ¶¶ 4, 6.[9] In reliance on this oral promise, Faulkner states that Medesco expended substantial time and money preparing for and attending the trade fair in Chicago. Faulkner Aff. ¶ 8. Faulkner states these expenditures exceeded the

59, 74 n. 92 (authored by Judith Mitchell Billings and Jeanne Henderson).

**9.** As the court indicated during oral argument, the record is insufficiently developed to determine whether the alleged representations of Soeng Ting may be imputed to the other individual defendants under an agency theory. Accordingly, the court does not reach this issue.

$7,500 advanced by the Soeng Ting Group. *Id.*

In further reliance on Soeng Ting's oral promise, Faulkner states Medesco spent substantial time and effort following up on contacts made at the trade fair and made promises to prospective customers that it would ship products to them. *Id.* ¶ 9. As a result of the defendants' alleged breach, Faulkner alleges Medesco was forced to breach its promises to prospective customers and was damaged as a result. *Id.*

These undisputed factual allegations support the conclusion that plaintiffs reasonably and detrimentally relied on the promise of the individual defendants, that such reliance was foreseeable by the defendants and that injustice can be avoided only by enforcement of the promise. In so concluding, the court emphasizes that its holding is limited to the state of record as it presently exists. All that is decided here is that the individual defendants may be estopped from asserting the statute of frauds as a defense to the breach of oral contract alleged in the second claim of the complaint. The individual defendants are free, of course, to assert other properly preserved defenses.

Based on the foregoing, and good cause appearing,

IT IS HEREBY ORDERED that

1. The individual defendants' motion for summary judgment is denied.

2. This order shall suffice as the court's ruling in this matter and no further order need be prepared by counsel.