Norma J. CAMBRON, As Executor of the Estate of Roger D. Cambron, Deceased, and Cambron Tire Service, Inc., Appellees,

v.

James L. MOYER, and DJNB, Inc., Appellants.

No. 92–1805.

Supreme Court of Iowa.

July 27, 1994.

Patrick J. McNulty and Stephanie L. Glenn of Grefe & Sidney, Des Moines, for appellants.

Mason J. Ouderkirk of Ouderkirk Law Firm, Indianola, for appellees.

Considered by McGIVERIN, C.J., and CARTER, LAVORATO, NEUMAN, and ANDREASEN, JJ.

McGIVERIN, Chief Justice.

This case involves various questions arising out of an alleged contract for the sale of stock in a closely held corporation. We conclude that the trial court committed reversible error in failing to address the applicability of the statute of frauds contained in article eight of the uniform commercial code, Iowa Code ch. 554 (1991).

We therefore reverse the judgment of the district court and remand the cause for a new trial.

I. *Background facts and proceedings.* Roger D. Cambron, now deceased, was the husband of plaintiff Norma J. Cambron, the executor of decedent's estate. Prior to his death, Roger operated Cambron Tire Service in Indianola for DJNB, Inc., an Iowa corporation all of whose shares were owned by defendant James L. Moyer. This arrangement resulted from a transaction in 1986 in which Moyer purchased for $490,000 the business's assets from Cambron Tire Service, Inc., the corporation under which Roger had owned the business. Moyer in turn formed DJNB, Inc., and sold the tire business to it. Moyer or his corporation made installment payments on the purchase price of the 1986 sale agreement through January 6, 1992, approximately two months after Roger's death.

After the tire service business failed to operate up to expectations, Moyer attempted to sell the stock in DJNB to Roger. In September 1991, during the course of their negotiations, Moyer's attorney prepared a "Stock Purchase Agreement" that proposed to sell Roger all the shares of stock in DJNB for $140,000. Moyer also prepared a "Settlement Agreement and Release" that would have relieved Moyer of any further obligations arising out of the 1986 sale. Moyer signed these two documents and sent them to Roger. Roger never signed them.

On October 18, 1991, Roger gave Moyer a check for $80,000 on the account of his corporation, Cambron Tire Service, Inc., that con-

tained a notation "for payment on Cambron Tire." According to plaintiff Norma Cambron, the parties agreed that the sale transaction would become final upon Roger's obtaining of bank financing for the remainder of the purchase price. Roger died on October 31 having never obtained financing. His estate requested Moyer to return the $80,000. Moyer refused.

The plaintiff estate and Cambron Tire Service, Inc. then brought this action against defendants Moyer and his corporation, DJNB, Inc., to recover the money Roger paid. Moyer counterclaimed, seeking enforcement of the stock purchase agreement and demanding the remaining $60,000 allegedly still due by Roger. For the purposes of this case, the parties regarded the estate and Cambron Tire Service, Inc. to have an identical interest. Also, for purposes of simplicity, we shall refer to the parties in the singular, e.g. "Cambron's estate" and "Moyer."

Cambron's estate first raised the affirmative defense to defendant's counterclaim that the alleged 1991 contract failed to comply with the statute of frauds of article eight of the uniform commercial code (Iowa Code section 554.8319), but the court refused to rule on or instruct the jury on that defense. The estate also raised the affirmative defenses of waiver by defendant and impossibility of performance by plaintiff of any contract.

After trial, a jury, in response to special verdict questions, determined that a contract existed between Roger and Moyer for the purchase of DJNB, Inc., but that the estate was excused from performing the contract based on impossibility and waiver. The verdicts did not specify whether the contract was oral or written.

The court granted Moyer's motion for judgment notwithstanding the verdict on the finding of waiver. The court overruled plaintiff's motion for judgment notwithstanding the verdict which again raised the statute of frauds issue.

In its judgment on the verdict, the court allowed Moyer to keep the $80,000, excused the estate from completing performance on the stock purchase agreement, forgave the remainder of the payments due by Moyer for the 1986 purchase of the tire service by Moyer and DJNB, and awarded Moyer a refund of payments made by him on the 1986 purchase agreement after Roger's death. In addition, the trial court awarded Moyer attorney fees based on a clause in the proposed stock purchase agreement that Moyer had signed and sent to Roger but which Roger had not signed.

Defendants Moyer and DJNB appealed and the plaintiff estate cross appealed.

All parties assert multiple assignments of error. However, under our view of the case, one issue is controlling on this appeal: the trial court's failure to address whether Iowa Code section 554.8319 (statute of frauds for sales of securities) precluded enforcement of the alleged transaction in this case. Plaintiff Cambron preserved error on this issue, including the filing of a motion for judgment notwithstanding the verdict that relied on section 554.8319. We agree with plaintiff that the court erred in failing to first address this issue. Rather than directing entry of judgment as requested by plaintiff Cambron, however, we believe the proper remedy is to remand for a new trial of the case. *See* Iowa R.App.P. 26.

II. *Statute of frauds.* Cambron's estate contends that the trial court erred in refusing to address and instruct the jury on its defense that the contract alleged by Moyer was a contract for the sale of securities under Iowa Code section 554.8102 and therefore unenforceable under the statute of frauds provision contained in section 554.8319. We agree.

■ A. Before we address the statute of frauds issue, we must first determine whether the alleged contract for the sale of securities in this case falls under article eight of the uniform commercial code, Iowa Code chapter 554, at all. Article eight "sets forth rules relative to the transfer of the rights that constitute securities and to the establishment of those rights against the issuer and other parties." Iowa Code § 554.8101 (official comment) (West Supp.1994).

Section 554.8102(1)(a) provides:

1. In this Article, unless the context otherwise requires

a.   A "*certified security*" is a share, participation, or other interest in property of or an enterprise of the issuer or an obligation of the issuer which is

i.   represented by an instrument issued in bearer or registered form;

ii.   of a type commonly dealt in on securities exchanges or markets or commonly recognized in any area in which it is issued or dealt in as a medium for investment; and

iii.   either one of a class or series or by its terms divisible into a class or series of shares, participations, interests, or obligations.

A slim minority of jurisdictions have concluded that shares in closely held corporations do not fall within the scope of this definition. In *Rhode Island Hospital v. Collins*, 117 R.I. 535, 368 A.2d 1225, 1227 (1977), the court reasoned that the shares in that case were not securities under article eight because the holder of such shares had no reasonable expectation of dividends derived from the profits of the enterprise. Similarly, in *Blasingame v. American Materials, Inc.*, 654 S.W.2d 659, 664 (Tenn.1983), the court opined that whether the shares before it were covered under article eight was a question of fact and that the party asserting coverage under article eight failed to sustain his burden of proof on that issue.

We believe these cases are in the minority for a good reason: they fail to adhere to the language of the code. Section 554.8102 does not require factual inquiries as to whether the holder had a reasonable expectation of a dividend or whether the shares were in fact dealt in on securities exchanges. *See Katz v. Abrams*, 549 F.Supp. 668, 671 (E.D.Pa.1982) (citing *Pantel v. Becker*, 89 Misc.2d 239, 391 N.Y.S.2d 325, 326 (Sup.Ct.1977)). Instead, it is enough that the shares are "of a type" traded on the exchanges, even if they are not so traded in fact. *Jennison v. Jennison*, 346 Pa.Super. 47, 499 A.2d 302, 304–05 (1985). And it is enough that the shares could be recognized as a "medium of investment," even if they are never used as such in fact. *Id.; see Bahre v. Pearl*, 595 A.2d 1027, 1035 (Me.1991), *overruling Zamore v. Whitten*, 395 A.2d 435, 441 (Me.1978). *See generally*

Tracy A. Powell, Note, *Stock in a Closely Held Corporation: Is It a Security for Uniform Commercial Code Purposes?*, 42 Vand. L.Rev. 579 (1989) (concluding the policies of the code and the intent of the drafters support inclusion of closely held stock in article eight).

The intent of the drafters to include shares of closely held corporations is further evinced in Iowa Code section 554.8204, which allows for restrictions to be made on the transfer of article eight securities. *See Jennison*, 499 A.2d at 305. Such restrictions are typically found only on shares in close corporations; if the drafters had intended to exclude such shares from article eight, they would not have included a section specifically referring to them. *Id.*

Neither party disputes that the shares in this case satisfy the other two requirements of section 554.8102; they are in registered form and classified as common shares. We therefore join the vast majority of jurisdictions and conclude that the alleged contract for the sale of corporate shares here falls under the scope of article eight.

■   B.   The trial court failed to consider whether article eight applied to this transaction. Therefore, as we have noted earlier, it did not rule on or instruct the jury on the applicability of its statute of frauds provision, section 554.8319. Subsection 554.8319(a) is the heart of the statute and provides:

A contract for the sale of securities is not enforceable by way of action or defense unless:

a.   there is some writing signed by the party against whom enforcement is sought or by that party's authorized agent or broker sufficient to indicate that a contract has been made for sale of a stated quantity of described securities at a defined or stated price....

Plaintiff Cambron argued strenuously at trial for the court to consider and instruct on this threshold provision, but it refused. The jury was not required to consider whether the record showed a writing signed by Roger or his agent sufficient to indicate a contract had been made for the sale of a stated quantity of shares of DJNB, Inc., at a stated

price. We believe the trial court's failure to consider section 554.8319 constituted reversible error.

The trial court's rather standard instructions to the jury, which stated that a contract would exist if a meeting of the minds had occurred, failed to adequately convey the law applicable to this case. *Cf. Benn v. Thomas,* 512 N.W.2d 537, 539 (Iowa 1994) (holding that failure to instruct on "eggshell plaintiff" rule failed to adequately convey applicable principles of tort law for that case).[1]

We note that it is the province of the court to construe any writings, *Allan v. Bemis,* 120 Iowa 172, 181, 94 N.W. 560, 562 (1903), and if the court concludes that the facts on the issue are not in dispute, it may rule on compliance with section 554.8319 as a matter of law. *See Hinchman v. Lincoln,* 124 U.S. 38, 48, 8 S.Ct. 369, 373, 31 L.Ed. 337, 341 (1888). Otherwise, however, compliance (or lack thereof) with the statute of frauds is a question of fact for the jury. *See id.; Samuels Bros. v. Falwell,* 215 Iowa 650, 652–53, 246 N.W. 657, 658–59 (1933); *Richmann v. Beach,* 201 Iowa 1167, 1168, 206 N.W. 806, 806–07 (1926); 67 Am.Jur.2d *Sales* § 187, at 459 (1985).

There are also several statutory and non-statutory exceptions that may allow complete or partial enforcement of a stock sale agreement despite its failure to satisfy subsection 554.8319(a).

For instance, subsection 554.8319(b) provides that a contract is enforceable if:

> b. delivery of a certificated security or transfer instruction has been accepted or transfer of an uncertificated security has been registered and the transferee has failed to send written objection to the issuer within ten days after receipt of the initial transaction statement confirming the registration, or *payment has been made, but the contract is enforceable under this provision only to the extent of the delivery or payment....*

*See Bains v. Piper, Jaffray & Hopwood, Inc.,* 497 N.W.2d 263, 271 (Minn.App.1993) (Under Minn.Stat. section 8–319(b) (equivalent to Iowa Code § 554.8319(b)), "a contract for the sale of securities is enforceable where payment has been made, so long as the payment was 'unequivocally referable' to the oral contract.") (quoting *Newman v. Crazy Eddie, Inc.,* 119 A.D.2d 738, 739, 501 N.Y.S.2d 398, 399 (1986)); · *Beta Drilling, Inc. v. Durkee,* 821 S.W.2d 739, 741 (Tex.App.1992) ("To invoke the exception of [section 8–319(b), there must have been] an act directly related to the stock, such as ... partially paying for it.").

The party who made the alleged part performance is usually the one seeking to enforce the alleged promise. Although this is not such a case, we believe that "the partial performance exception [could render] the contract enforceable by either party." *Mann v. Commissioner,* 483 F.2d 673, 678 (8th Cir.1973) (Van Oosterhout, J.) (applying Iowa law). The holding in *Mann* applied to the statute of frauds provision in article two of the U.C.C., Iowa Code section 554.2201, and relied on the comments of that section, which state: "Receipt and acceptance either of goods or of the price constitutes an *unambiguous overt admission by both parties that a contract actually exists." Id.* at 678–79. This reasoning applies with equal force to transactions under article eight. *See* Iowa Code § 554.8319 official comment ("This Section is intended to conform the statute of frauds provisions with regard to securities to the policy of the like provisions in Article 2 (Section 2–201).... Paragraph (b) sets forth several actions which, if taken by a transferee, constitute a manifestation of intent to purchase.... Making payment is a more definite indication of intent.").

Ordinarily, if the contract is enforceable to the extent performed, Moyer should deliver as much stock as Roger paid for. *See Burns v. Gould,* 172 Conn. 210, 374 A.2d 193, 200 (1977). At oral argument, however, counsel for Cambron indicated that his client did not want the shares. If that remains true after retrial, the trial court will have to determine whether another remedy would be possible.

Other exceptions outside the statute of frauds may be available as well because supplementary general principles of law apply

---

1. As stated above, the instructions also did not require the jury to find the contract was in writing. Thus, the jury could have found an oral contract existed.

along with the provisions of the uniform commercial code. unless a particular provision of the code displaces those principles. Iowa Code § 554.1103; *see generally Warder & Lee Elevator, Inc. v. Britten*, 274 N.W.2d 339, 342 (Iowa 1979) (holding that in Iowa promissory estoppel is a valid nonstatutory exception to the statute of frauds of U.C.C. article two); *Medesco, Inc. v. LNS Int'l, Inc.*, 762 F.Supp. 920, 924 (D.Utah 1991) (concluding that section 8–319 of the U.C.C. (Iowa Code section 554.8319) does not displace the unenumerated exceptions to the statute of frauds such as promissory estoppel); *Kiely v. St. Germain*, 670 P.2d 764, 770 (Colo.1983) (en banc) (same); *Hall v. Horizon House Microwave, Inc.*, 24 Mass.App. 84, 506 N.E.2d 178, 184 (1987) (same); *Kenney v. Porter*, 604 S.W.2d 297, 303–05 (Tex.Civ.App. 1980) (same). *See also* James J. White & Robert S. Summers, *Uniform Commercial Code* § 2–6, at 95 (3d ed. 1988) ("There is every reason to believe these [judge-made exceptions to the writing requirement of section 2–201] remain good law, post-code.") (footnote omitted).

If the court or jury has determined that the alleged 1991 contract is unenforceable in whole or in part under the statute of frauds, it should then go on to consider whether Cambron is entitled to restitution for the $80,000 paid to defendant. *See Burns*, 374 A.2d at 200.

III. *Excuse.* Both plaintiff Cambron and defendant Moyer raise several assignments of error relating to the trial court's instructions on Cambron's affirmative defenses of excuse to Moyer's counterclaim to enforce the alleged stock transfer agreement. Because we conclude the trial court erred in considering whether under the statute of frauds the alleged agreement was enforceable in the first instance, the outcome of that issue on retrial will affect whether the jury should then consider if Cambron should be excused from completing any performance still owing on the alleged 1991 agreement.

The conclusion the jury and trial court reaches with respect to the statute of frauds issue will leave the court with three possible scenarios with respect to the applicability of any defense of excuse. First, if the contract is unenforceable under Iowa Code section 554.8319, no performance would be owing for the trial court to excuse, and Cambron's excuse defenses therefore would be moot.

Second, if the agreement is enforceable only under the partial performance exception of Iowa Code section 554.8319(b), the defenses of excuse will also be moot; because the agreement under that provision is enforceable only to the extent already performed, again no additional performance would be owing for the court to excuse.

Only under the third scenario would the defenses of excuse come into play—namely, if the court concludes that the parties had a fully enforceable agreement under the statute of frauds. If the court concludes that performance should be excused, moreover, it must also consider the remedy of rescission because an excused party is entitled to any benefit conferred on the other party. *Maytag Co. v. Alward*, 253 Iowa 455, 465–66, 112 N.W.2d 654, 660 (1962).

Because the trial court allowed the jury to consider the defense of excuse without first applying the statute of frauds, we do not address the parties' assignments of error regarding the trial court's posttrial rulings on those matters.

IV. *Attorney fees.* Plaintiff contends the trial court erred in awarding attorney fees to Moyer. Because we reverse and remand the case for retrial, that award is set aside. Moyer's motion for attorney fees can be reconsidered by the trial court if, after retrial, the jury or court finds that an enforceable written contract existed that also allowed attorney fees to the successful party.

V. *Conclusion.* We reverse the district court's judgment and remand the cause for retrial consistent with this opinion. Because we conclude that the trial court erred in failing to consider the applicability of article eight's statute of frauds provision, a new trial of the whole case is necessary. Other than as discussed above, we do not reach the other issues raised in defendant Moyer's appeal or plaintiff Cambron's cross appeal.

REVERSED ON CROSS APPEAL; AP-
PEAL MOOTED; REMANDED.