#30786, #30793-a-SRJ

**2026 S.D. 39**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

JEFFREY FISCHER, ALLISON
FISCHER, and FISCHER FARMS
PARTNERSHIP,                                    Plaintiffs and Appellees,

v.

MISSY FISCHER-OLSON,
REED J. OLSON, and EXCEL
UNDERGROUND, INC.,                              Defendants and Appellants.

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
LINCOLN COUNTY, SOUTH DAKOTA

THE HONORABLE RACHEL R. RASMUSSEN
Judge

DANIEL K. BRENDTRO
MARY ELLEN DIRKSEN
BENJAMIN HUMMEL of
Hovland, Rasmus, & Brendtro, Prof. LLC
Sioux Falls, South Dakota                       Attorneys for defendants and
                                                appellants.


STEVEN W. SANFORD of
Cadwell, Sanford, Deibert
   & Garry, LLP
Sioux Falls, South Dakota                       Attorneys for plaintiffs and
                                                appellees.


CONSIDERED ON BRIEFS
JANUARY 12, 2026
OPINION FILED **06/24/26**

#30786, #30793

JENSEN, Chief Justice

[¶1.] Jeffrey Fischer, Allison Fischer, and Fischer Farms Partnership (collectively Fischer Farms) commenced this action seeking to recover loans they claim were made to Reed Olson, Missy Fischer-Olson, and Excel Underground, Inc. (collectively Excel). A jury returned a verdict awarding Fischer Farms the sum of $849,550. Excel appeals, arguing the circuit court erred by refusing to instruct the jury on the statute of frauds and by refusing to give its proposed instruction for the recovery of damages for breach of contract. Fischer Farms cross-appeals the circuit court's refusal to award prejudgment interest. We affirm.

**Factual and Procedural Background**

[¶2.] Fischer Farms is a South Dakota general partnership. Jeff Fischer and his father, Lynn Fischer, are general partners of Fischer Farms. Allison Fischer is Jeff's wife. Excel is a South Dakota corporation. Reed Olson is the sole shareholder, officer, and director of Excel. Missy Fischer-Olson is Reed's wife, Lynn's daughter, and Jeff's sister.

[¶3.] Fischer Farms claimed it made loans to Excel during a period from 2014 to early 2018, while Excel was engaged in litigation over a payment dispute with the Brant Lake Sanitary District involving Excel's installation of a sewer system at Brant Lake. Excel sued Brant Lake to recover money it claimed was owed on the project, while Brant Lake sued Excel alleging defective work. The cases were consolidated, and a jury returned a verdict in favor of Excel for $1,569,691.81 on February 1, 2018. This Court affirmed the decision on appeal in

-1-

*Excel Underground, Inc. v. Brant Lake Sanitary District*, 2020 S.D. 19, 941 N.W.2d 791. Brant Lake paid the judgment on July 27, 2021.

[¶4.] Fischer Farms commenced this action on July 31, 2020, seeking to enforce Excel's purported loan repayment obligations. At trial, Fischer Farms presented evidence that because of the financial strain on Excel while the *Brant Lake* litigation was pending, Lynn and other family members made several loans to Excel totaling more than $1 million. There were no promissory notes reflecting most of the claimed loans, and because of the informal nature of the loans, most of which Lynn made on behalf of the partnership without Jeff's knowledge, Fischer Farms claimed the total balance owed was difficult to calculate. Fischer Farms asserted that the account receivable balance of $1,210,000—as shown on Fischer Farms' financial statement as of December 19, 2017—reflected the total indebtedness. Fischer Farms acknowledged that this included a bank loan secured by Fischer Farms' property that Excel had repaid. Fischer Farms sought $929,550 at trial, plus the repayment of a $50,000 loan made by Jeff and Allison.

[¶5.] Excel acknowledged receiving approximately $325,000 in loans from Fischer Farms, Jeff, and Allison, but claimed that these loans had been repaid. There were written promissory notes for some of the loans, but Excel claimed that the other loan balances were "fictional." Excel maintained that after Fischer Farms began having financial problems, Fischer Farms created these "fictional" loan balances owed by Excel. Excel asserted that these loan balances continuously changed on Fischer Farms' balance sheets.

[¶6.]        During the trial, Fischer Farms introduced an excerpted transcript from the *Brant Lake* trial, in which Reed testified that Excel's borrowings from his family totaled over $1 million.  Additionally, counsel for Excel stated in closing arguments at the *Brant Lake* trial, "This other number, 1.168 million dollars, that's how much Reed has borrowed from family to stay afloat."  Although Excel did not claim the loans as a part of its damages, the evidence that it borrowed more than $1 million from Fischer Farms was intimately tied to, and supported, its claim for lost profits.[1]

[¶7.]        Fischer Farms also introduced several emails to and from Missy, in which she acknowledged the debt to Fischer Farms and stated that the debt would be repaid.[2]  On October 25, 2018, Laura Kulm Ask,[3] an attorney retained by Fischer Farms in 2017 for a possible bankruptcy, emailed Missy and a consultant for Fischer Farms, asking, "When will the $1,277,500 judgment be paid to [Fischer Farms,]" and whether the amount should be discounted if Excel will not pay it for some time.  Kulm Ask emphasized in the email that "[i]t is crucial" that Fischer

---

1.     Excel asserted that after Brant Lake wrongfully made a claim on Excel's bond, the business lost multiple jobs and suffered significant lost profits from 2014 until the time of trial.  Excel presented expert testimony that it had lost profits during those years, ranging from $680,000 to more than $2.5 million.  Reed testified the business had never borrowed money in the past, but because of losses caused by Brant Lake's actions, Excel was forced to borrow more than $1 million from Fischer Farms and family to keep the business afloat.  The jury in the *Brant Lake* case awarded Excel damages for lost profits in the amount of $800,000, in addition to other contractual damages.

2.     Each of Missy's emails were sent from the following email address: missy@fischer-farms.com.

3.     Kulm Ask has since been appointed as a United States Bankruptcy Judge for the District of South Dakota.

Farms' financial information is "accurate." Later that same day, Missy responded, "We are expecting this settled in March of [20]19." In a November 1, 2018, email to Andy Pedersen of Structured Asset Finance, whose company was considering providing financing to Fischer Farms, Missy stated, "I've attached the judgment that my husband'[s] company has won in a lawsuit on a construction project . . . . As stated on Fischer Farms['] balance sheet, our company owes Fischer Farms and they will be paid in full once we receive the judgment." In a November 29 email to Andy, Missy again stated, "When the judgment is received, Fischer Farms will be repaid in full." On December 11, Missy again emailed Andy, stating, "As per your request, please see the attached regarding collection of the judgment that is owed to Fischer Farms from Excel Underground, Reed Olson and Missy Fischer Olson." In an October 1, 2019, email to Mike Frei, Fischer Farms' banker at Commercial State Bank, Missy stated, "We will get any and every loan paid back. We [w]ill have the money but at this moment in time we've sunk lower than rock bottom."

[¶8.]　　　　Excel filed a written motion for judgment as a matter of law pursuant to SDCL 15-6-50(a), which was argued at the close of evidence. Excel argued the evidence was insufficient as a matter of law to establish the mutual assent necessary for an express contract. Additionally, Excel argued there were no writings that satisfied the statute of frauds in SDCL 53-8-2(4). Excel further asserted the evidence was insufficient to support a finding that Missy was acting as an agent for Excel or Reed when she authored any of the writings supporting the existence of the alleged loan agreements. The circuit court denied the motion in its entirety.

[¶9.]        Excel also proposed two jury instructions, instructions #112[4] and

#114,[5] that addressed the statute of frauds.  The circuit court denied both proposed

instructions.  Excel also proposed a breach of contract damages instruction—jury

instruction #123.  The instruction included language similar to the circuit court's

instruction #23 but added that Fischer Farms must prove its contract damages with

reasonable certainty.  The circuit court rejected proposed instruction #123, stating:

> Some of that language I believe was already in my proposed.
> And I don't believe the additional language is necessary to cover

---

4.        Proposed jury instruction #112 provided in full:

> For an alleged loan to be enforceable, both of the following
> conditions must be met:
>
> (a) The loan contract or some memorandum of it is in writing
> and signed by the alleged debtor; and
> (b) There must be a definite understanding and agreement as to
> the exact amount of money, the interest rate, the time for
> repayment, and, the method of repayment.
>
> In addition, for an alleged loan to be enforceable against a
> corporation, an additional condition must be met:
>
> (c) The written loan contract or memorandum must be signed by
> an officer of the corporation, or, signed by an agent of a
> corporation who has written authority to enter into the loan.

5.        Excel's proposed jury instruction #114 provided in full:

> Certain agreements must be in writing in order to be binding
> and enforceable.  The rule requiring this is called the Statute of
> Frauds, and, its purpose[] is to remove uncertainty by requiring
> written evidence of enforceable obligations.
>
> 1. A loan agreement must be in writing and signed by the
> debtor.
> 2. An agent of a corporation only has authority to enter into a
> loan agreement if authorized in writing to do so.
> 3. An extension of time to repay a debt must be in writing to be
> enforceable.

> specifically the bottom paragraph. I understand that it's taken from case law, but that doesn't necessarily mean every case law statement that supports your position needs to come in, which I think a number of these are.

Additionally, in rejecting another proposed damages instruction, the circuit court stated, "In my proposed, there is a line that says damages for a breach of contract which are not clearly ascertainable in both their nature and origin are unrecoverable. . . . I know it's a pattern, but I don't know that it's necessary."

[¶10.] The circuit court instructed the jury on breach of implied and express contract, unjust enrichment, and promissory estoppel relating to the alleged loans. The court also instructed the jury on Excel's counterclaim for unjust enrichment relating to alleged services provided by Missy and Reed, which the jury ultimately denied. The court did not instruct the jury on the applicability or requirements of the statute of frauds. Consistent with the verdict form, the jury did not reach unjust enrichment or promissory estoppel after finding for Fischer Farms on the breach of contract claim.

[¶11.] The jury returned a verdict in favor of Fischer Farms in the amount of $849,550. Specifically, the jury found that "one or more plaintiffs ha[d] one or more valid and enforceable loan agreements with any of the defendants[,]" that "one or more defendants breach[ed] such agreement(s) with plaintiffs[,]" and that "the breach [was] a legal cause of damage to plaintiffs[.]" In determining the "plaintiffs" had valid and enforceable loan agreements with "any of the defendants," the verdict form did not ask the jury to determine whether each one of the defendants had entered into valid loan agreements with the plaintiffs.

[¶12.]     Excel renewed its motion for judgment as a matter of law after the trial. The court entered an order denying Excel's post-trial motions. Fischer Farms submitted a proposed judgment to the circuit court, which included $234,612 in prejudgment interest. The circuit court denied the prejudgment interest, noting that Fischer Farms "did not request any jury instructions on prejudgment interest or a special verdict interrogatory on the date of loss." The court reasoned that the date of loss or damage is an issue of fact for the jury and "therefore [Fischer Farms] should have requested that the jury determine the appropriate date to begin calculation of prejudgment interest in order to recover the same." Consistent with the verdict form, the court entered a judgment in favor of all the plaintiffs against all three defendants for the full amount of indebtedness found by the jury.

[¶13.]     Excel appeals, raising two issues:[6]

1.     Whether the circuit court erred when it refused to instruct the jury on the statute of frauds.

2.     Whether the circuit court abused its discretion when it refused Excel's "reasonable certainty" damages instruction.

[¶14.]     Fischer Farms cross-appeals, raising one issue:

3.     Whether the circuit court erred when it failed to award prejudgment interest on the damages awarded at trial.

---

6.     Excel also argues the circuit court erred in failing to instruct the jury on the question of whether the alleged indebtedness was a gift rather than a loan. At trial, the court denied Excel's argument in its motion for judgment as a matter of law that the evidence established that the money given to Excel was a gift. Excel has not challenged this ruling on appeal, and Excel did not propose a gift instruction or object to the court's failure to give such an instruction. Therefore, the gift instruction issue is waived. *See Hauck v. Clay Cnty. Comm'n*, 2023 S.D. 43, ¶ 4 n.4, 994 N.W.2d 707, 709 n.4 ("Arguments not raised at the trial level are deemed waived on appeal." (citation omitted)).

**Standard of Review**

[¶15.]     "[A] trial court has discretion in the wording and arrangement of its jury instructions, and therefore we generally review a trial court's decision to grant or deny a particular instruction under the abuse of discretion standard.  However, when the question is whether a jury was properly instructed overall, that issue becomes a question of law reviewable de novo.  Under this de novo standard, we construe jury instructions as a whole to learn if they provided a full and correct statement of the law."  *State v. Rouse*, 2025 S.D. 29, ¶ 42, 23 N.W.3d 467, 480 (citation omitted).

**Analysis**

*Proposed statute of frauds instructions*

[¶16.]     SDCL 53-8-2(4) provides that "[a]n agreement for a loan of money or for an extension of credit" is "not enforceable by action unless the contract or some memorandum thereof is in writing and subscribed by the party to be charged or his agent, as authorized in writing[.]"  The role of the statute of frauds is evidentiary.  *Jacobson v. Gulbransen*, 2001 S.D. 33, ¶ 26, 623 N.W.2d 84, 90.  "The writing requirement of the statute of frauds ensures reliable evidence is presented before a contract[ual] obligation is enforced against one of the parties to the contract."  *Northstream Invs., Inc. v. 1804 Country Store Co.*, 2007 S.D. 93, ¶ 11, 739 N.W.2d 44, 48.

[¶17.]     Excel argues the circuit court erred by refusing to instruct the jury on the writing requirement set forth in SDCL 53-8-2(4) for an agreement for a loan of money.  Excel argues that the jury should have been instructed on the questions of

whether the writings were sufficient to satisfy the requirements of the statute of frauds and whether the writings satisfied the requirement that Missy was "authorized in writing" to act as an agent for Excel in acknowledging the indebtedness. Excel does not challenge the circuit court's denial of the motion for judgment as a matter of law. Instead, Excel's argument is premised entirely on its contentions that it was a question of fact for the jury to determine whether the statute of frauds was satisfied and that the circuit court erred by failing to instruct the jury on the requirements of the statute of frauds.

[¶18.] Fischer Farms responds that the statute of frauds does not apply to the agreement in this case because it was an agreement to *repay* a loan rather than to *make* a loan.[7] Alternatively, Fischer Farms argues that the writing requirement of SDCL 53-8-2(4) was satisfied because Missy, as an authorized agent of Excel, set forth through signed emails the amount of the debt and the obligation to repay it at a certain time.

[¶19.] Excel relies on *Cambron v. Moyer*, 519 N.W.2d 381 (Iowa 1994), to support its assertion that "[i]t is well-settled that the applicability of the [s]tatute of [f]rauds is a jury question." The Iowa Supreme Court in *Cambron* reversed the trial court's failure to instruct the jury on certain *exceptions* to the statute of frauds in the Uniform Commercial Code and determined the application of those exceptions presented questions for a jury. *Id.* at 383–85. However, *Cambron* reaffirmed the

---

7. Given the limited argument on this issue, as well as our disposition of the statute of frauds issue, we leave for another day the question of whether SDCL 53-8-2(4) applies to both an agreement to make a loan and to repay a loan.

general rule that "it is the province of the court to construe any writings, and if the court concludes that the facts on the issue are not in dispute, it may rule on compliance with [the UCC statute of frauds] as a matter of law." *Id.* at 384 (internal citation omitted). Similarly, we have held that questions of contract interpretation arising from a writing are generally questions of law. *Ziegler Furniture & Funeral Home, Inc. v. Cicmanec*, 2006 S.D. 6, ¶ 14, 709 N.W.2d 350, 354.

[¶20.] Other courts have regularly held that "[w]hether a writing satisfies the statute of frauds is a question of law." *Doss & Harper Stone Co., Inc. v. Hoover Bros. Farms, Inc.*, 191 S.W.3d 59, 62 (Mo. Ct. App. 2006) (citations omitted); *see also May Trucking Co. v. Nw. Volvo Trucks, Inc.*, 241 P.3d 729, 737 (Or. Ct. App. 2010) ("Whether documents are sufficient to satisfy the statute of frauds is also a question of law for the court." (citations omitted)); *Westside Est. Agency, Inc. v. Randall*, 211 Cal. Rptr. 3d 119, 130 (Cal. Ct. App. 2016) ("Whether a writing is sufficient is a question of law[.]" (citation omitted)); *Young v. Adams*, 830 N.E.2d 138, 141 (Ind. Ct. App. 2005) ("Whether a writing satisfies the statute of frauds is a question of law for the court." (citation omitted)); *Blair v. Brownson*, 197 S.W.3d 681, 683 (Tenn. 2006) ("Whether a memorandum . . . is sufficient to satisfy the Statute of Frauds is a question of law.").

[¶21.] "[T]he existence and terms of a contract are questions" of fact for the jury when disputed facts exist. *J. Clancy, Inc. v. Khan Comfort, LLC*, 2021 S.D. 9, ¶ 18, 955 N.W.2d 382, 389 (citation omitted). Thus, in cases involving the statute of frauds with disputed underlying facts, the court makes the preliminary legal

determination as to whether a writing satisfies the statute of frauds, and the jury is only left to make the factual determination as to "whether the parties 'actually entered' into the contract." *Melford Olsen Honey, Inc. v. Adee*, 452 F.3d 956, 962 (8th Cir. 2006) (citation omitted).

[¶22.]     The circuit court denied Excel's Rule 50(a) motion for judgment as a matter of law. The court then instructed the jury on the fact questions involving the existence and terms of the contract, as well as the amount owed on any loan agreement, but refused to instruct the jury on the statute of frauds instructions offered by Excel. However, the court gave instruction #10, which provided, "Under South Dakota law, an email communication can satisfy the requirement of a signed writing when it includes a typewritten name or other symbol of authentication where the party intends such act to be his or her signature."[8] Although the circuit court's oral ruling denying Excel's Rule 50(a) motion for judgment as a matter of law suggests it was declining to rule on the statute of frauds issue until certain factual matters were determined by the jury, particularly as to whether Missy had the authority to bind Excel, there were no specific questions submitted to the jury related to this issue. In any event, after the jury considered all the evidence and rendered its verdict finding that there were valid and enforceable loan agreements, the circuit court considered Excel's Rule 50(b) motion, which incorporated its Rule 50(a) arguments relating to the statute of frauds issue. The court's denial of the

---

8.     There was no objection or discussion about the purpose of providing the jury with instruction #10. The circuit court's explanation for denying Excel's proposed statute of frauds instructions also lacks clarity.

-11-

Rule 50(b) motion for judgment as a matter of law resolved the question of whether the statute of frauds had been satisfied.

[¶23.]	From our review of the record, aside from the underlying factual issues on contract formation and the amount of any indebtedness owed, there were no disputed facts regarding whether Missy authored the emails concerning the indebtedness to Fischer Farms. Taken as a whole, these writings memorialize more than $1 million in debt that Missy acknowledged was owed to Fischer Farms and that the debt would be repaid when Excel collected on the *Brant Lake* judgment. Excel has not cited any authority to suggest these recitals were insufficient as a matter of law to satisfy the statute of frauds. Further, we have been clear that the "[t]he agreement itself need not be the writing relied upon" and that "a memorandum evidencing the obligation is sufficient" to satisfy the statute of frauds. *Jacobson*, 2001 S.D. 33, ¶ 17, 623 N.W.2d at 89 (citation omitted). Although Excel has not specifically challenged the circuit court's denial of Excel's Rule 50(a) and Rule 50(b) motions for judgment as a matter of law, on this record, we conclude that the writings satisfy the evidentiary purposes of SDCL 53-8-2(4) to permit Fischer Farms to enforce the terms of the loan agreement as found by the jury, particularly as against Missy. *See Northstream Invs., Inc.*, 2007 S.D. 93, ¶ 11, 739 N.W.2d at 48.

[¶24.]	Nonetheless, Excel argues that these writings did not bind Reed, or Excel as a corporate entity, as the documents signed by Missy do not satisfy the requirement that the writing be "subscribed by the party to be charged or his agent, as authorized in writing." SDCL 53-8-2. But this argument is made in the face of sworn testimony by Reed in the *Brant Lake* trial that he borrowed more than $1

million from family, including his father-in-law, to keep *Excel* "afloat." "The role of the statute of frauds is an evidentiary one[,]" but it "will not, however, be used to work an injustice." *Jacobson*, 2001 S.D. 33, ¶ 26, 623 N.W.2d at 90. Under the unique circumstances of this case, we conclude that Reed and Excel are judicially precluded from raising this statute of frauds defense.

[¶25.]      Although neither party raised the issue of judicial estoppel on appeal, it was raised below, and this Court can raise it on its own motion.[9] *See Healy Ranch P'ship v. Mines*, 2022 S.D. 44, ¶ 53, 978 N.W.2d 768, 782 ("[B]ecause judicial estoppel is intended to protect the integrity of the fact-finding process by administrative agencies and courts, the issue may properly be raised by courts, even at the appellate stage, on their own motion[.]" (quoting *Hayes v. Rosenbaum Signs & Outdoor Advert., Inc.*, 2014 S.D. 64, ¶ 13, 853 N.W.2d 878, 882)).

[¶26.]      Reed's testimony in the *Brant Lake* trial that more than $1 million had been borrowed from family members, as well as the closing argument about this testimony from Excel's counsel, was offered to bolster Excel's claim for lost profit damages. Excel claimed because of the large losses to the business caused by the alleged wrongful bond claim by Brant Lake that it was only able to keep the business afloat by borrowing over $1 million during this time. The jury awarded Excel $800,000 for lost profits, plus other damages. In the action now before us,

---

9.      In the circuit court, Fischer Farms sought summary judgment on the indebtedness based upon judicial estoppel. Excel resisted the motion and argued judicial estoppel was not appropriate. The circuit court did not directly address whether Excel's statute of frauds defense was precluded by judicial estoppel, but correctly determined that "there remain genuine issues of material fact as to the precise amount owed[.]" Fischer Farms did not continue to assert judicial estoppel thereafter.

however, Excel asserts the loans Fischer Farms claimed were owed, totaling approximately $1 million, were "fictional."

[¶27.]    "Taking inconsistent positions in this way implicates the doctrine of judicial estoppel and our particular interest in 'protect[ing] the essential integrity of the judicial process.'" *Id.* (citation omitted). "Unlike collateral estoppel or equitable estoppel, judicial estoppel requires neither privity between parties in the two proceedings nor detrimental reliance by the other party." *Canyon Lake Park, L.L.C. v. Loftus Dental, P.C.*, 2005 S.D. 82, ¶ 34, 700 N.W.2d 729, 738 (citation omitted).

[¶28.]    "[T]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle[.]" *Wyman v. Bruckner*, 2018 S.D. 17, ¶ 12, 908 N.W.2d 170, 175 (citation omitted). However, "for judicial estoppel to apply":

> The later position must be clearly inconsistent with the earlier one; the earlier position was judicially accepted, creating the risk of inconsistent legal determinations; and the party taking the inconsistent position would derive an unfair advantage or impose an unfair detriment to the opponent if not estopped.

*Id.* (citation omitted). Excel's position that the approximate loan balances of $1 million claimed by Fischer Farms are "fictional" is "clearly inconsistent" with its position at the *Brant Lake* trial that its borrowings totaled over $1 million. At the *Brant Lake* trial, Reed testified as follows:

> Q:    Reed, did I list those correctly that you got about a million dollars from your father-in-law, 50,000 from your brother-in-law, and 68,000 from your stepson?
>
> A:    Yes, and also another $50,000 from my dad.
>
> . . .

> Q: Reed, my estimate of math on that is about 1.16 million, is that what you get, too?
>
> A: Yes.
>
> Q: Prior to the Brant Lake job, from any sources, did Excel have a need to borrow a total like that?
>
> A: No, it did not.

And during closing arguments, counsel for Excel stated:

> Over the course of the time, Excel was unable to continue working. And was borrowing money trying to finance the Brant Lake project.
>
> This other number, 1.168 million dollars, that's how much Reed has borrowed from family to stay afloat. Now, going through this yesterday, I noticed that the total of these two, meaning the loss of his equity, the amounts that he's had to borrow, is 1.54 million dollars. *Which is very, very close to the amount that we believe Excel is owed.*

(Emphasis added.)

[¶29.] In addition to this testimony being incompatible with its claims in this trial, Reed's *Brant Lake* testimony was offered to buttress the claim for lost profits. In this sense, the jury's finding that Excel had sustained $800,000 in lost profits, and more than $1.5 million in total damages, shows a judicial acceptance of Reed's testimony that Excel owed more than $1 million to Reed's father-in-law, a partner of Fischer Farms. Further, Excel's inconsistent positions would result in deriving both an unfair advantage to Excel and an unfair detriment to Fischer Farms. By acknowledging the indebtedness under oath, Excel supported its substantial claim for damages in *Brant Lake*. Now, Excel argues this money was never borrowed and attempts to assert the legal doctrine of the statute of frauds as an evidentiary shield to prevent Fischer Farms' action to enforce the agreement.

-15-

[¶30.]      As we recently stated:

> Courts do not relish the prospect that an adept litigant may
> succeed in proving a proposition in one action, and then succeed
> in proving the opposite in a second. At worst, successful
> assertion of inconsistent positions may . . . defeat a legitimate
> right of recovery. At best, the judicial system is left exposed to
> an explicit demonstration of the frailties that remain in
> adversary litigation and adjudication. The theories of judicial
> estoppel that reduce these risks do not draw directly from the
> fact of adjudication. Instead, they focus on the fact of
> inconsistency itself.

*Healy Ranch P'ship*, 2022 S.D. 44, ¶ 54, 978 N.W.2d at 782–83 (citation omitted).

Under the circumstances presented here, judicial estoppel precludes Excel from

using the statute of frauds to challenge the existence of the loan agreement with

Fischer Farms.

***Damages instruction***

[¶31.]      At trial, the circuit court gave jury instruction #23 on damages:

> A breach of contract is defined as a violation of a contractual
> obligation. The measure of damages for a breach of contract is
> the amount which will compensate the aggrieved party for all
> detriment legally caused by the breach, or which, in the ordinary
> course of things, would be likely to result from the breach.
>
> Damages for a breach of contract which are not clearly
> ascertainable in both their nature and origin are unrecoverable.

[¶32.]      Excel argues that the circuit court's failure to instruct on the

"reasonable certainty" requirement for damages was reversible error. Specifically,

Excel argues the circuit court abused its discretion when it rejected Excel's proposed

instruction #123, which would have added the following additional paragraph to the

circuit court's damages instruction:

> Proof of damages requires a reasonable relationship between the
> method used to calculate damages and the amount claimed.

> There is no specific formula; to recover damages, that party must prove the damages with reasonable certainty. Reasonable certainty requires proof of a rational basis for measuring loss, without speculation.

[¶33.]       Fischer Farms responds that the circuit court's denial of the "reasonable certainty" language in Excel's proposed instruction #123 was not an abuse of discretion because the damages instruction was a correct statement of the law when read as a whole. Specifically, Fischer Farms contends that the circuit court's damages instruction was comparable to a similar instruction approved by this Court in *Von Sternberg v. Caffee* that did not include the "reasonable certainty" language. 2005 S.D. 14, ¶ 18, 692 N.W.2d 549, 555.

[¶34.]       The circuit court's damages instruction is nearly identical to the language of SDCL 21-2-1, which provides for the recovery of damages for breach of contract:

> For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom. *No damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and their origin.*

(Emphasis added.)

[¶35.]       The "reasonable certainty" standard "requires a reasonable relationship between the method used to calculate damages and the amount claimed." *Smith v. WIPI Grp., USA, Inc.*, 2023 S.D. 48, ¶ 57, 996 N.W.2d 368, 383. The "clearly ascertainable" requirement in SDCL 21-2-1 requires contract damages to be "clearly ascertainable in both their nature and their origin." The aim of our

decisions and SDCL 21-2-1 is to prohibit the assessment of speculative contract damages. We have stated that "damages are speculative, not when the amount is uncertain, but when the *fact* of damages is uncertain." *ISG, Corp. v. PLE, Inc.*, 2018 S.D. 64, ¶ 26, 917 N.W.2d 23, 32 (citation omitted). There was no dispute in this case about the method to calculate damages, their origin, or the basis for the damages claimed by Fischer Farms. Once the jury found that a loan agreement existed and had been breached, the only uncertainty as to damages was the amount owed, not the fact of damage.

[¶36.] Even if we were to conclude the court abused its discretion in refusing to include the "reasonable certainty" language in the damages instruction, there is no prejudice on this record. "Error in declining to apply a proposed instruction is reversible only if it is prejudicial[.]" *State v. Martin*, 2004 S.D. 82, ¶ 21, 683 N.W.2d 399, 406 (citation omitted); *see LDL Cattle Co., Inc. v. Guetter*, 1996 S.D. 22, ¶ 32, 544 N.W.2d 523, 530 ("To set aside a civil verdict due to an erroneous instruction, prejudice must be established by the moving party." (citations omitted)).

[¶37.] The evidence shows that from 2014 to 2016, Excel incurred no less than $350,000 in debt to Fischer Farms, and by 2018 the indebtedness to Fischer Farms had swelled to over $1.2 million. Importantly, Missy's writings and Reed's sworn testimony at the *Brant Lake* trial acknowledged more than $1 million of indebtedness owed to Fischer Farms. The jury verdict awarding $850,000 to Fischer Farms was well within the amount of indebtedness acknowledged by Excel to be owed. As such, Excel has not shown any prejudice on this record from the court's failure to give Excel's proposed instruction on damages.

*Prejudgment interest*

[¶38.]    Fischer Farms cross-appeals the circuit court's refusal to award prejudgment interest on the damages assessed by the jury.  Excel responds that prejudgment interest is not recoverable because the alleged loans had a 0% interest rate.  Excel also claims that Fischer Farms waived the recovery of prejudgment interest by failing to request an instruction or special interrogatory to the jury to determine the date of the default.

[¶39.]    Awards of prejudgment interest are governed by SDCL 21-1-13.1, which provides in part, "Prejudgment interest on damages arising from a contract shall be at the contract rate, if so provided in the contract; otherwise, if prejudgment interest is awarded, it shall be at the Category B rate of interest specified in § 54-3-16."  SDCL 54-3-16(2) provides that the "Category B rate of interest is ten percent per year[.]"  Although Reed testified that Excel was not obligated to pay any interest on the loans, there was no evidence of an agreed rate of interest in the event of a default.  Thus, pursuant to SDCL 54-3-16, in the absence of an agreed upon contract interest rate, the applicable statutory prejudgment interest rate was 10% from the date of default.[10]

[¶40.]    We have held that "South Dakota statutes require an award of prejudgment interest on compensatory damages[.]"  *JAS Enters., Inc. v. BBS*

---

10.    At the start of trial, Excel asked the circuit court to amend the verdict form to require the jury to determine the applicable rate of interest.  The circuit court properly denied this request, finding the rate of interest to be a question of law for the court rather than one of fact for the jury.  *See Mealy v. Prins*, 2019 S.D. 57, ¶ 40, 934 N.W.2d 891, 902 ("Calculation of prejudgment interest is only a question of fact for the jury's consideration when the date of loss or damage is at issue.").

*Enters., Inc.*, 2013 S.D. 54, ¶ 45, 835 N.W.2d 117, 129; *see also* SDCL 21-1-13.1 ("The court shall compute and award the interest provided in this section[.]"); *Alvine v. Mercedes-Benz of N. Am.*, 2001 S.D. 3, ¶ 29, 620 N.W.2d 608, 614 ("Prejudgment interest is now mandatory, not discretionary."). "Prejudgment interest accrues from the date of the loss or damage." *Stern Oil Co., Inc. v. Brown*, 2018 S.D. 15, ¶ 53, 908 N.W.2d 144, 160 (citing SDCL 21-1-13.1).

[¶41.]     While the court may calculate prejudgment interest when there is no dispute as to the date of the loss, SDCL 21-1-13.1 provides:

> If there is a question of fact as to when the loss or damage occurred, prejudgment interest shall commence on the date specified in the verdict or decision and shall run to, and include, the date of the verdict . . . .  If necessary, special interrogatories shall be submitted to the jury.

[¶42.]     The parties presented disputed testimony regarding all aspects of the loans, including their existence, the amount owed, and the timing of repayment. Thus, there were questions of fact as to when the loss or damage occurred, and the jury was never asked to determine the date of the breach.

[¶43.]     Although Fischer Farms requested prejudgment interest in its complaint, it did not request a jury instruction on prejudgment interest.  Further, Fischer Farms did not propose special interrogatories in the verdict form or object to the lack of a special interrogatory on prejudgment interest when settling instructions.  Instead, Fischer Farms took the position that prejudgment interest commenced from the date that Excel collected the judgment against Brant Lake and that special interrogatories were unnecessary.  But on this record, the terms of the loan agreement, including the due date, were questions of fact for the jury.

[¶44.] "Verdict forms to be submitted to the jury should be treated in the same manner as jury instructions to be submitted . . . . Similarly, at [the] instruction conference parties should object to any error of commission or omission in the verdict forms to be submitted to the jury." *Grynberg v. Citation Oil & Gas Corp.*, 1997 S.D. 121, ¶ 32, 573 N.W.2d 493, 503 (citation omitted). "A party must object in a manner that 'alert[s] the [circuit] court to the claimed error[.]'" *Mealy v. Prins*, 2019 S.D. 57, ¶ 39, 934 N.W.2d 891, 902 (citation omitted). "[F]ailure to object to the error prior to submitting the verdict form to the jury" is typically "fatal to consideration of the issue on appeal."[11] *Id.* Fischer Farms' failure to request a jury instruction or interrogatory for prejudgment interest waived the prejudgment interest claim.

[¶45.] We affirm.

[¶46.] DEVANEY, MYREN, and GUSINSKY, Justices, concur.

[¶47.] SALTER, Justice, concurs in part and concurs specially.

SALTER, Justice (concurring in part and concurring specially).

[¶48.] I agree with the Court's conclusion that "judicial estoppel precludes Excel from using the statute of frauds to challenge the existence of the loan agreement with Fischer Farms." *Supra* ¶ 30. I write separately to respectfully

---

11. This situation is distinct from *Mealy v. Prins*, where the verdict form submitted the prejudgment interest issue to the jury and appellants failed to object to the verdict form. *Id.* ¶ 37, 934 N.W.2d at 902. We reasoned that the failure to object to the verdict form did not waive the objection because the amount of prejudgment interest was a question of law, it "required no additional fact-finding by the jury[,]" and appellants "neutralized the error" by bringing the circuit court's error to its attention "in post-trial proceedings while it was still easily correctable." *Id.* ¶ 39.

express my view that principles of judicial restraint counsel against any analysis on the merits of Excel's statute of frauds argument. *Regalado v. Mathieson*, 2004 S.D. 87, ¶ 17, 684 N.W.2d 67, 73 ("[P]rinciples of judicial restraint dictate that when an issue effectively disposes of the case, other issues that are presented should not be reached." (alteration in original) (quoting *Thompson v. Summers*, 1997 S.D. 103, ¶ 24 n.8, 567 N.W.2d 387, 395 n.8 (Miller, C.J., concurring in result))). In my view, the Court's discussion of the statute of frauds issue is properly viewed as obiter dictum and not precedential. *See Moeller v. Weber*, 2004 S.D. 110, ¶ 44 n.4, 689 N.W.2d 1, 15 n.4 ("Dicta are pronouncements in an opinion unnecessary for a decision on the merits"); *Dictum*, Black's Law Dictionary (12th ed. 2024) ("A judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential.").

[¶49.] I also write to emphasize that the factors commonly used to determine the application of judicial estoppel are just that, factors—not unyielding formulaic elements. Indeed, the United States Supreme Court has noted that these traditional judicial estoppel factors "do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel." *New Hampshire v. Maine*, 532 U.S. 742, 751 (2001).

[¶50.] And this is sensible because the concern underlying the doctrine of judicial estoppel is first and foremost an institutional one. "The essential function of judicial estoppel is to prevent intentional inconsistency; the object of the rule is to protect the judiciary, as an institution, from the perversion of judicial machinery." *Edwards v. Aetna Life Ins.*, 690 F.2d 595, 599 (6th Cir. 1982). And, as the United

States Supreme Court has recently explained, "[j]udicial estoppel is an 'equitable doctrine' intended 'to protect the integrity of the judicial process,' both by 'prohibiting parties from deliberately changing positions according to the exigencies of the moment,' and by preventing the 'risk of inconsistent court determinations.'" *Keathley v. Buddy Ayers Constr. Inc.*, No. 25-6, 2026 WL 1686028, 608 U.S. ___, at *4 (June 11, 2026) (quoting *New Hampshire*, 532 U.S. at 749–51).  Using very similar terms, we have held that "[t]he gravamen of judicial estoppel . . . is the intentional assertion of an inconsistent position that perverts the judicial machinery."  *State v. St. Cloud*, 465 N.W.2d 177, 180 (S.D. 1991) (quoting Rand G. Boyers, Comment, *Precluding Inconsistent Statements: The Doctrine of Judicial Estoppel*, 80 Nw. U. L. Rev. 1244, 1249 (1986)).

[¶51.]        Judicial estoppel exists to "protect[] the courts from being manipulated by chameleonic litigants who seek to prevail, twice, on opposite theories."  *In re Airadigm Commc'ns, Inc.*, 616 F.3d 642, 661 (7th Cir. 2010) (quoting *Levinson v. United States*, 969 F.2d 260, 264 (7th Cir. 1992)).  But as it relates to the concept of judicial acceptance, we have recognized that a party need not have prevailed in the earlier proceeding on the exact discrete position it is now advancing:

> Judicial estoppel is not limited to situations in which the party has prevailed on the merits by pressing the prior position; rather, it requires only "judicial acceptance" of the prior position, meaning that the court "adopted the position urged by the party, either as a preliminary matter or as part of a final disposition."

*Healy Ranch P'ship v. Mines*, 2022 S.D. 44, ¶ 59, 978 N.W.2d 768, 783–84 (quoting *Branch Banking & Tr. Co. v. Pac. Life Ins.*, 645 F. App'x 387, 391 (6th Cir. 2016) (unpublished)).

[¶52.]    Part of Excel's theory in the *Brant Lake* trial was that it sustained significant lost profits from the claims Brant Lake asserted and the litigation that ensued. Deprived of the profits it claimed to have lost, Excel argued that it was forced to borrow money from Fischer Farms in excess of $1 million. In this way, Excel's position concerning its debt to Fischer Farms was accepted by the jury in the form of its verdict awarding the related lost profits and ultimately accepted by the circuit court when it incorporated the verdict into its judgment.

[¶53.]    Excel's position in this case is much different. It now claims that the loans are "fictional" or unenforceable because they are not in writing. This is exactly the type of contradictory and irreconcilable conduct that judicial estoppel is meant to prevent. In my view, we should apply it here and hold that it fully resolves the statute of frauds issue.